## No. 14,840.

CALNON ET AL., DOING BUSINESS AS C. AND G. TRANSFER
COMPANY *v.* SOREL.
(119 P. [2d] 615)

Decided October 20, 1941.   Rehearing denied December 1, 1941.

468

Messrs. BLOUNT, JANUARY & YEGGE, for plaintiffs in error.

Mr. ISAAC MELLMAN, for defendant in error.

*En Banc.*

MR. JUSTICE BURKE delivered the opinion of the court.

THESE parties appeared in reverse order in the trial court and are hereinafter referred to as there, or as the company and Mrs. Sorel, respectively. Plaintiff's deceased husband is referred to as Sorel and two of the company's employees as Mull and Webb.

Mrs. Sorel brought this action for damages for the death of her husband in an automobile collision between a truck driven by him (hereinafter referred to as truck No. 1), and a truck belonging to the company and driven by Mull and Webb (hereinafter referred to as truck No. 2). Prayer was for $5,000, and on a verdict for that amount for plaintiff judgment was entered in her favor. To reverse that judgment the company prosecutes this writ. Counsel for the company argue their seventeen assignments under six heads, i.e., 1. No evidence of the

alleged negligence of defendants; 2. conclusive evidence of such negligence on the part of plaintiff as defeats recovery; 3. error in giving and refusing certain instructions; 4. erroneous admission in evidence of subsection (d) of section 266, chapter 16, '35 C.S.A.; 5. the giving of an additional instruction, after verdict, in the absence of counsel; the 6th we think covered by the foregoing.

The collision in question occurred about 12:30 a.m. in Logan county. Truck No. 2, consisting of a tractor and trailer, loaded with oil and gasoline, was traveling north. Truck No. 1, also with a trailer, and loaded, was traveling in the same direction. No. 2 stopped to repair a tire and No. 1 drove into it from the rear. Both men in charge of No. 2 escaped, both in charge of No. 1 were killed.

■ 1. Of the negligence of defendants there can be no question. Their vehicle was about eight feet wide and stopped ·entirely on the pavement, whereas there was a shoulder of that width onto which it could have been safely driven and no good reason appears why it was not. '35 C.S.A., c. 16, §§228, 266.

■ 2. Mull and Webb were named as defendants but were not served. But for their testimony there is no sufficient evidence of negligence on the part of Sorel. Both men say they saw truck No. 1 approaching more than a mile away, that it was coming at forty to fifty miles per hour and never swerved or slowed down until it struck. Mull, who was driving truck No. 2, is the more positive and is not disputed by Webb. He says fifty miles, and that he determined the speed of Sorel's truck by the rapidity of the approach of its lights and the peculiar sound of its motor, and that he watched it for a minute. If so it was then twelve seconds distant. He says he then flashed his lights four or five times until No. 1 was distant one hundred feet, or one and one-fourth seconds; that he then jumped from the running board where he had been standing, ran around the front of No. 2 and had cleared its right fender when

No. 1 struck. Webb says at the time Mull began to flash his lights No. 1 was one-quarter of a mile or fifteen seconds, distant. These witnesses testified to distance, but not time, but doubtless some of the jurors could and did make the computation. We do not say these men could not and did not judge Sorel's speed as they claimed, nor that they were not capable of the lightning-like movements they described. But so commonplace have automobiles become, and so universally are they driven at all hours and under all conditions, that details of their use and manipulation, their speed and appearance day and night, have become a part of that common knowledge of mankind in the light of which jurors are authorized to consider testimony and weigh alleged facts. If, examined in that light, this jury found itself unable to give credence to the perfection of sight, hearing, and speed claimed by Mull and Webb we cannot escape the conclusion that it was well within its province. Other discrepancies in the testimony of these witnesses reinforce this conclusion. Since the negligence of defendants was primarily theirs, it can scarcely be assumed that they were giving plaintiff the best of the situation. Remembering now that the jurors were told that if they believed any witness had knowingly and willfully testified falsely as to any material fact they might disregard all his testimony, and that in all cases of doubt or conflict, negligence, primary or contributory, is for the jury, we must decline to disturb its judgment on this ground. *Arps. v. Denver,* 82 Colo. 189, 257 Pac. 1094; *Grunsfeld v. Yetter* [*Yenter*], 100 Colo. 570, 69 P. (2d) 309.

3. Defendants' tendered instructions 8, 9, 11, 12, and 13 were refused and error is assigned. No. 8 is based upon the assumed necessity for truck No. 2 to stop where it did. There is no evidence to support it. No. 9 relates to the type of flares required and carried. It is hereinafter disposed of. No. 11 relates to Sorel's negligence. It is in part disposed of by what has been heretofore said. So far as good it is covered by others

given. Moreover, while argued, it is not covered by the assignments. The foregoing applies also to No. 12 save that error thereon is assigned. A portion of No. 13 is good but covered by others.

■■ Error is assigned to the giving of the court's instructions numbered 8, 11, 12, 13 and 13a. No. 8 is related to defendants' No. 9. It concerns the applicable statute governing the kind of flares to be carried and used by such freighters as truck No. 2. There is no conflict in the record on the subject. Beyond question defendants complied with the law in that respect. Their negligence in re flares consisted in failure to use what they carried. The statute directs that one in the situation they claimed for truck No. 2 "shall immediately display" a flare at the side of the vehicle nearest the traffic, "and then proceed" to place one two hundred feet to the rear and another two hundred feet in front. Mull and Webb, as they say, first placed the front and rear signals and hence had no time to place that at the side. The reason for the procedure directed by the act, and the negligence involved in that followed, are too apparent to require comment here.

No. 11 given is clearly correct and the objection to it deserves no notice. The objection to No. 12 is covered by what we have said concerning No. 8. If No. 13 contains an erroneous statement it favors defendants. The objection to 13a is without merit unless proof of Sorel's negligence was so overwhelming as to justify an instructed verdict for defendants. We have already disposed of that contention.

■ 4. This point brings up again the question of the kind of flares required by the statute and the type carried. Right or wrong it could not have been prejudicial for reasons already given.

■ 5. The jury returned two signed verdicts; one for plaintiff, the other for defendants. The court promptly discovered the anomaly and by proper questions ascertained it was a simple mistake. The jurors were there-

upon returned to their room to make the necessary correction. This was done, the jury returned, was polled, and the verdict received and recorded. The record is so explicit as to leave no room for doubt and no possibility of prejudice. Moreover, it had been expressly stipulated that the verdict should be received in the absence of counsel. Had they been present and objected the court's action must necessarily have been the same.

Finding no reversible error in the record the judgment is affirmed.

MR. CHIEF JUSTICE FRANCIS E. BOUCK and MR. JUSTICE BAKKE dissent.