## No. 16,916.

SPILLANE *v.* WRIGHT ET AL.
(259 P. [2d] 1078)

Decided June 22, 1953.   Rehearing denied July 27, 1953.

Mr. Harold B. Wagner, Mr. Carl A. Wyers, for plaintiff in error.

Messrs. Wolvington & Wormwood, for defendants in error Construction Company and Svercl.

Mr. Harold Taft King, Mr. Fletcher Thomas, Mr. Darwin D. Coit, for defendant in error Wright.

*En Banc.*

Mr. Justice Holland delivered the opinion of the court.

Defendant in error Mabel M. Wright, on an amended complaint, obtained judgment on a jury verdict in the sum of $21,122.69, with interest and costs against three defendants, namely, Spillane, Briggs Brothers Construction Company, a corporation, and Joseph Svercl, for personal and other injuries received when the automobile which she was driving collided with a part of a truck and its equipment on a bridge about four miles north of Larkspur, Colorado, on February 24, 1950.

She had alleged negligence on the part of Spillane, owner of the equipment being transported; on the part of the Briggs Construction Company, owner of the truck carrying the equipment; and Svercl, the driver thereof. Under an instruction of the court to the effect that if the jury found that any one of the defendants was negligent, such negligence would constitute negligence on the part of all the defendants; the judgment was against defendants. Spillane, by writ of error, issued herein,

seeks a reversal of the judgment as to him, while Svercl and Briggs Company have not sought a writ of error.

Material to our determination we find the substance of the following facts to be not seriously disputed.

■ Spillane, as an individual, owned certain dirt-hauling equipment, including D-8 caterpillars with bull-dozer blades attached and dirt carryalls. Such equipment as is involved was, on or about February 20, 1950, at or near Fowler, Colorado, where Spillane met one Ted Briggs, who was the owner of a tractor and lowboy used for transporting heavy equipment, and Briggs had leased his equipment to the Briggs Construction Company, of which he was the principal owner. Spillane inquired of Briggs if Briggs could move the above-mentioned equipment from Fowler to Keenesburg, Colorado, in the northern part of the state. Briggs told him that it would cost $125.00 a trip; it was contemplated there would be four trips; and the total cost would be $500.00. There was some discussion as to whether the Briggs' tractor would be driven by one of his drivers or whether Spillane would furnish the driver; however, Briggs wanted his own driver, and it appears that Svercl had been a regular employee of the Briggs Company for about eighteen months prior to this time and Briggs selected him to drive the truck. Neither Briggs nor the Briggs Company had a Public Utilities Commission permit and the Briggs Company could not haul for hire. The various loads contemplated to be hauled would consist of overlength, overwidth and overweight equipment for which, under the pertinent statutes, a special permit was necessary from the highway department before transportation thereof would be allowed on the highway. Spillane arranged for such permit through their operating engineer, and on the morning of February 24, Spillane personally went to the highway department in Denver and obtained a special transport permit for the contemplated trips, the application for which he signed personally, and the permit issued thereon authorized the

*applicant* to operate or move oversized and overweight equipment on the highway. The proportions of vehicles permitted on the highway without special permit are, that no single vehicle shall exceed a width of 8 feet, with exception of a farm tractor, which may not exceed 10 feet, and the over-all length of a combination of vehicles coupled together shall not exceed the length of 50 feet. The equipment here involved was 12 feet in width, being the length of the blade on the tractor which was loaded on the truck, and the truck and carryall, which was being trailed, was about 70 feet in length, therefore a special permit was required.

Svercl was driving the equipment, that is the truck or lowboy with a caterpillar tractor with blade attached loaded thereon, and the dirt carryall trailing behind. It is shown that Briggs had a set of tractor tracks weighing approximately 2,000 pounds up on the gooseneck of the lowboy, which he was bringing to Denver for repair; and it further is shown that without this extra set of tracks on the gooseneck, the equipment to be loaded could have been loaded higher up on the lowboy, and the tractor blade would have been much higher from the ground. Spillane's engineer and Svercl loaded the equipment; Svercl started on the journey; had some tire trouble and tried to reach Briggs; failing to get him, he contacted Spillane, who ordered and sent new tires to Svercl. Svercl then proceeded on his way, traveling north. As he approached a narrow bridge at the point of the accident, he was traveling about five miles per hour and started onto the bridge. Plaintiff, driving south, at some distance, which is not too certain, back from the bridge, observed the equipment and she was driving some forty to fifty miles per hour and proceeded onto the bridge, because she said her side of the road was clear. It appears that Svercl, thinking her space was not too wide, attempted to pull to the right as far as he could to give her all the space possible, and in so doing the blade of the tractor which was loaded low on the lowboy,

struck the concrete railing on the bridge, tearing out a section thereof, and tipped the tractor to the west or over onto the plaintiff's side of the bridge or road, and it either fell onto plaintiff's car or she drove into it. Her automobile was totally wrecked; she received serious injuries that required hospitalization and lengthy medical treatment; and she asked for damages in the sum of $43,016.14. There is no particular object in detailing her injuries or any of the evidence concerning the matter of negligence on the part of Svercl, driver of the truck, or the matter of contributory negligence on the part of plaintiff. The question of negligence was submitted to the jury under proper instructions without serious objection and the jury's resolution thereon was against Svercl, driver of the truck, the Briggs Construction Company, and Spillane, and in favor of plaintiff. On the question of contributory negligence, and as we read a voluminous record of over 1,000 folios, we are confident in saying that the verdict is supported thereby, and further, it is not excessive. Several questions are presented that require consideration and determination.

Briggs Construction Company and Svercl are not here contending against the judgment, and it is disclosed that plaintiff's judgment against Briggs and Svercl has become final and that $6,108.08 has been paid to the clerk of the district court on behalf of Briggs and Svercl in partial satisfaction of the judgment, this being paid by the insurance carrier and representing the total amount of its liability under the insurance policy.

In plaintiff's original complaint the Briggs Company and Svercl were named as defendants and they filed a third-party complaint, claiming that Spillane was responsible, to which Spillane responded in denial and asserted a counterclaim against the Briggs Company and Svercl to the end that if he was adjudged to be liable to plaintiff, that he should be indemnified by the Briggs Company and Svercl.

In the answer of the Briggs Company and Svercl, they

admitted that the Briggs Company was the owner of the equipment operated by Svercl; that Spillane was owner of the equipment loaded thereon; that Svercl was an employee of Spillane; and generally denied other allegations, but asserting the defense of contributory negligence on the part of plaintiff. Spillane answered the amended complaint of plaintiff, in which Spillane was named as defendant also, and denied that Svercl was Spillane's agent; denied that Spillane was transporting the equipment; and as a further defense alleged that plaintiff's injuries were the result of an unavoidable accident; and further that plaintiff's injuries were the result of her negligence. The Briggs Company and Svercl answered the cross complaint of Spillane; denied that Svercl was an agent of Briggs and denied other allegations.

The contention of Spillane as disclosed by several of the ten points specified, is to the general effect that there was no evidence that Svercl was Spillane's employee, and generally that the relationship between Spillane and the Briggs Company was that the Briggs Company was an independent contractor, and whose negligence, if any, was not chargeable to Spillane. It is obvious that the trial court, upon hearing all of the evidence, was of the opinion that it was a joint enterprise, and we believe the evidence amply supports that conclusion. There are some outstanding indications of the independent contractor relationship, such as, the Briggs Company was the owner of the equipment which he agreed to use in transporting Spillane's equipment for a definite and fixed sum, and to generally bear the expenses connected with such transportation, such as gas, oil and other incidentals, and the driver. It is shown that the driver was an employee of Briggs Company for a year and a half; had driven the same truck on other such transporting jobs; and that he was paid for this job by the Briggs Company. On the other hand, if the thread of negligence runs through the Briggs and Spillane side

586

of the lawsuit, it stemmed from two sources, first, the improper loading of the equipment, which was done under the direction of Spillane's engineer with the assistance of Svercl, the driver, in that the blade of the tractor extended an equal distance on the left-hand side to that on the right, thereby creating a hazard in the opposite lane of traffic; and, had it been loaded higher on the lowboy, which was prevented on account of the tractor tracks being on the gooseneck, the right side or end of the blade would not have struck the concrete railing on the bridge when the driver pulled too far to the right, all of which resulted in the tractor being thrown over into the path of plaintiff's car; therefore the negligence imputable to Spillane was that of his agent in the loading of the truck, and Spillane is further connected with the entire operation by the fact that he caused two permits to be obtained, one through his representative at Pueblo who signed the name of the Spillane Construction Company by himself as agent, and the other obtained by Spillane personally at Denver in which he stated, in effect that he had a Public Utilities Commission permit, which, in fact, he did not have, and he thereby became, as such applicant for the special permit, liable and responsible for this equipment being on the highway. While the equipment was overwide and overlength, it may not be said to be inherently dangerous, which would fasten a stricter liability on Spillane; and therefore where the operation was, upon the application of Spillane, permitted by Public Utilities Commission to be carried on, the applicant cannot escape liability for harm to others by dodging behind the general rule that an employer is not liable for the tort or negligence of an independent contractor. The operation here, specially provided for by Spillane, involved an unusual hazard on the highway and a more or less unreasonable risk of danger to others using the highway, all of which resolves itself into the indisputable situation of liability and negligence growing out of the operation

that would fall upon all parties involved, being, in this instance, Spillane, Briggs Construction Company and Svercl, the driver.

Under the circumstances here, it cannot logically be contended that all three defendants were not engaged in the joint prosecution of a common purpose and apparently each had authority to act for all in respect to control of the agencies employed. The test is whether they were so controlling the movements of the undertaking and not merely whether there existed a complete understanding as to their real authority. It cannot be disputed that each did exercise some part in the undertaking, in some respects jointly and in others independently.

██ ██ It is claimed that the court erred in giving instruction No. 11, which is as follows: "The Court instructs the jury that it is the duty of one loading equipment for transportation on the public highway to load the same in a careful and prudent manner so as not to endanger life or property while traveling on the public highway. The Court further instructs the jury that if you find from a preponderance of the evidence that any one of the defendants was negligent, such negligence would constitute negligence on the part of all the defendants." This was a proper instruction under the evidence in the case, which we already have discussed.

██ ██ Counsel for plaintiff in error contend that the court erred in permitting counsel for plaintiff to inquire on voir dire as to each juror's interest in any insurance company by the usual permitted questions along that line, because counsel for Spillane had advised the court prior to the examination of the jury that Spillane carried no insurance and any reference to an insurance company would be prejudicial to Spillane. The court followed the proper and approved course in the examination as permitted here, and it must be assumed that the inquiry was made to obtain information concerning a juror's interest, and not for the purpose of informing

588

the jury that there was an insurance carrier. Neither was there any error, as claimed, in permitting plaintiff to call defendant Svercl for cross-examination and interrogation as in such cases provided.

It further is contended that the trial court erred in refusing to submit Spillane's counterclaim to the jury. This certainly could not apply to defendant Svercl, because his name appears nowhere in the specification of points, and no claim was made that the trial court erred in dismissing the counterclaim and cross complaint as to Svercl. The only specification directly points and refers to Briggs Construction Company. We believe the trial court was right, under the circumstances of this case, in denying the right of indemnification. Spillane does not seek indemnity on the theory of agency, that is, to attempt to recover from a negligent agent. He strictly denies agency at all stages of the case; and there is no attempt to allege blame under the employer and employee theory, or that of principal and agent.

Our study of the record convinces that the case was carefully and fairly tried; the jury properly instructed; and its resolution as to the determining factors in the case will not be disturbed, because we find ample evidence for its support.

The judgment is affirmed.

*On Petition for Rehearing.*

*Rehearing Denied.*

Mr. JUSTICE HOLLAND.

With some reluctance we depart from the usual method of disposing of petitions for rehearing without written observations, that is, by entering an order either granting or denying same. However, since the petition presently under consideration not only violates our rules by presenting an argument, it impugns the integrity of the court by challenging a statement made in the opinion, namely, that the loading of equipment "* * * was

done under the direction of Spillane's engineer with the assistance of Svercl * * *" and saying that the statement so made "is not supported by *any* evidence."

██ As an act of mental patience, and fully conscious that we are not infallible, we have reread the transcript of testimony consisting of approximately eight hundred folios, and if we properly characterize the full reach of the above quoted portion of the petition for rehearing, it is either a fallacious attempt to mislead the court, or a bold assertion made without reading the record, all of which, in either event, is inexcusable. Silence is sometimes the severest criticism, however, if we remained silent by simply entering an order denying the petition, there would be no indication of our intolerance of a too prevalent tendency to file argumentative petitions and it would appear that we condone unfair and unethical practices. As a further indication of unfamiliarity with, or disregard of, our rule, counsel for petitioner seek an oral argument, which is specifically prohibited.

Counsel state that the quoted portion of the opinion is not supported by *any* evidence, when in fact the testimony before the court was unequivocal and in absolute support of the statement.

This petition for rehearing was filed by counsel for Spillane. As a witness, Spillane testified in part as follows: "Q. You heard your name mentioned here, and that of Chester Brillhart? A. Yes. Q. He worked for you didn't he? A. Yes. Q. What was his capacity with you, please? A. Operating engineer. Q. Had you placed under the charge of Mr. Brillhart the towing of the equipment that was to be moved, equipment of yours? A. It was his responsibility to group it, grease it, and fuel it. Q. So you knew Mr. Brillhart would be present near Fowler, Colorado, when the equipment was loaded and he was going to group it, and *load* it, and so forth?" (Emphasis supplied.) A. Yes. Q. That is what you told him to do? A. That's right."

Joseph Svercl, a defendant, testified in part as fol-

lows concerning the loading of the equipment at Fowler: "Q. When you were out there you just had the tractor and the lowboy, didn't you? · A. Yes. Q. And Mr. Brillhart was there near Fowler when you loaded on the caterpillar, or when the caterpillar was loaded and when the carryall was attached to the lowboy, is that right? A. Yes. Q. Did you load the caterpillar on the lowboy? A. No. Q. Who did? A. Chester Brillhart. Q. Was there anybody else who helped Chester Brillhart load this equipment on the lowboy and affix this carryall to the rear of the lowboy? A. No. Q. Chester Brillhart was the only one? A. Yes. Q. Did you and Mr. Brillhart together load the caterpillar onto the body that morning, February 24, — you said that didn't you? A. Mr. Brillhart loaded the caterpillar."

The petition for rehearing is denied.