No. 18,199.

FRANK SPILLANE *v.* UNITED STATES FIDELITY AND GUARANTY COMPANY.
(325 P. [2d] 700)

Decided May 19, 1958.   Rehearing denied June 2, 1958.

Messrs. YEGGE, BATES, HALL & SHULENBURG, Mr. DON R. EVANS, for plaintiff in error.

Mr. DUANE O. LITTELL, for defendant in error.

*En Banc.*

MR. JUSTICE HALL delivered the opinion of the Court.

WE shall refer to plaintiff in error as plaintiff or Spillane, and to defendant in error as defendant.

On November 6, 1949, the defendant, for an annual premium of $114.80, issued and delivered to plaintiff its *Schedule Liability Policy* (Manufacturers or Contractors Form) No. SMC 151506, the policy period being from November 6, 1949, to November 6, 1950. In the policy declarations, Item I states:

"Name of Insured    *Frank Spillane*

Address    *1165 Pike View, Lakewood, Colorado*

Location of premises    *Same, Rocky Ford, Colo. & elsewhere in the State of Colorado*

The business of the Named Insured is *As described herein.*"

The policy nowhere described plaintiff's business, but it appears from the record that he, among other things, was engaged in land leveling for hire, and for such purpose used a crawler-type tractor with bulldozer attachment and a carryall, both owned by plaintiff.

Shortly prior to February 24, 1950, plaintiff had been using the above mentioned equipment in a land leveling job near Fowler, Colorado, and on completion of said

job desired to have said equipment moved from Fowler to Keenesburg, Colorado, and to that end employed one Ted Briggs, owner of a lowboy and International truck, to transport his equipment from Fowler, Colorado, to Keenesburg, for the agreed price of $500.00. Plaintiff owned no equipment for moving purposes; however, he applied to the state highway engineer for a special permit to move the above mentioned equipment, which was overweight and over the allowable width, over State Highways Nos. 1 and 2, from Pueblo to Keenesburg. Plaintiff, in order to obtain said special permit, falsely stated that he had *his own* PUC permit for this International truck and lowboy, which actually belonged to Briggs, who had no PUC permit. The equipment was loaded on the lowboy by Briggs, with the assistance of plaintiff's engineer; the blade of the bulldozer extended out on both side beyond the width of the lowboy.

On February 24, 1950, the truck and lowboy, driven by one Svercl, an employee of Briggs, was proceeding north on State Highway No. 1 at a point about four miles north of Larkspur. At that time and place a Mrs. Wright was driving her car in a southerly direction and met Svercl on a bridge; the right end of the bulldozer blade struck the bridge abutment and tipped the bulldozer over and onto the car of Mrs. Wright, injuring her. The plaintiff, on learning of this accident, reported it to the defendant and, on February 27, 1950, signed and delivered to defendant his written statement setting forth in detail his arrangements with Briggs for the moving of this equipment, whereupon the defendant told the plaintiff he was not liable for the accident and that it was not covered by his insurance. About March 27, 1950, plaintiff received a letter from an attorney representing Mrs. Wright, seeking payment for her injuries. Plaintiff took this letter to defendant and was again advised by defendant's agent that he was not liable and had no insurance coverage for this accident and to take the letter to an attorney. Later, Mrs. Wright brought

suit in the Denver District Court against Briggs, Svercl and Spillane, and obtained a judgment against all three defendants for $21,122.69, which judgment was affirmed by this court in *Spillane v. Wright, et al.*, 127 Colo. 580, 259 P. (2d) 1078. Briggs paid $6,108.00 on the judgment, the same being the total amount of his insurance coverage.

At no time after suit was filed against Spillane did he or his attorney notify the defendant of the pendency of the action in the District Court or in the Supreme Court, nor did he or his attorneys turn over to defendant copies of the summons or complaint or amended complaint, and did not notify defendant of the outcome of the litigation.

In this action, plaintiff alleges that he had to pay $16,457.79 on the judgment of Mrs. Wright and, in addition, $1890.63 for attorney fees and costs in defending the suit brought by Mrs. Wright. He further alleges that it was the duty of defendant, under the above policy, to defend plaintiff against the action of Mrs. Wright and to pay up to $5,000.00 on any judgment recovered by her. Plaintiff seeks to recover from defendant $5,000.00 plus expenditures in defending in the amount of $1890.63. Defendant, in its answer, claims that its policy of insurance does not protect plaintiff in the situation, and further, that even if it did, plaintiff, having failed to notify defendant of the suit and appeal, and having failed to forward to defendant "every demand, notice, summons or other process received by him or his representative," cannot recover under the policy. Trial was to the court, at the close of which plaintiff's complaint was dismissed, for the reason that the operation out of which the action arose and the judgment in favor of Mrs. Wright was not covered by the policy of insurance.

Plaintiff is here by writ of error, seeking reversal and an order directing the trial court to enter judgment for plaintiff in accordance with the prayer of his complaint.

The material facts are not in dispute and the only problem involved is an interpretation of the policy of insurance. The following provisions of the policy are pertinent:

### "DECLARATIONS

"Item 1. * * *

*Location of premises Same* [referring to plaintiff's address, 1165 Pike View, Lakewood, Colorado], Rocky Ford, Colo. & *elsewhere in the State of Colorado.* * * * (Emphasis supplied.)

* * *

"Item 3. The insurance afford is only with respect to such and so many of the following coverages and divisions thereunder as are indicated by specific premium charge or charges in Item 4. The limit of the Company's liability against each such coverage and division thereunder shall be as stated herein, subject to all of the terms of this policy having reference thereto.

"Item 4. Coverages and Divisions selected and premium charges for same:

### Purpose of Use

1. Premises-Operations
   3470 *EXCAVATION* — for cellars or foundations of buildings, bridges, retaining walls or dams — including rock — (excavation in connection with street or road construction or tunneling to be separately rated.)" [Premium opposite this item is $98.40.]

### "INSURING AGREEMENTS

"I. Coverage A — Bodily Injury Liability

To pay on behalf of the Insured all sums which the Insured shall become obligated to pay by reason of the liability imposed upon him by law for damages, including damages for care and loss of services, because of bodily injury, including death at any time resulting therefrom, sustained by any person or persons, caused by accident and arising out of the hazards hereinafter defined."

## "DEFINITION OF HAZARDS

"Division 1.   Premises — Operations

The ownership, maintenance or use of the premises, and all operations during the policy period which are necessary or incidental thereto."

### "CONDITIONS

"3.   Premises Defined

The unqualified word 'premises' wherever used in this policy shall mean (a) the premises designated in the declarations including buildings and structures thereon and the ways immediately adjoining and (b) when a territory is designated in the declarations in addition to a specific location [such as elsewhere in the State of Colorado], places within said territory while used by or on behalf of the Named Insured, *except public ways used in common with others.*" (Emphasis supplied and portion in brackets inserted.)

### "EXCLUSIONS

"This policy does not apply:

(a) Under Division 1 of the Definition of Hazards, to the ownership, maintenance or use of aircraft by or in the interest of the Insured; or to elevators at premises owned, rented or controlled by the Insured; or to dogs, draft or saddle animals, boats, *vehicles of any kind other than hand trucks, push carts and bicycles, or the loading or unloading thereof, while away from the premises,* unless specifically declared and described in this policy and premium charged therefor; or to liability with respect to which insurance is or can be afforded under Division 6 of the Definition of Hazards; * * *." (Emphasis supplied.)

Attached to the policy is the following rider:

"IT IS AGREED:

### "Vehicle Exclusion

1.   That the reference in Exclusion (a) of the policy to *'vehciles* while away from the premises' shall not

apply to the following described equipment *except while towed by or carried on a power driven vehicle not so described:*

*Crawler-type (continuous tread) tractors,* ditch or trench diggers, power cranes or shovels, graders, scrapers, rollers, well-drilling machinery, asphalt spreaders, concrete mixers, mixing and finishing equipment for highway work, other than concrete mixers of the mix-in-transit type, farm implements; and, if not subject to motor vehicle registration, farm tractors or trailers, and equipment used principally on the insured premises;

2. That when this endorsement is attached to a Schedule Liability Policy (Manufacturers or Contractors Form), (a) the phrase *'except public ways used in common with others' in Condition 3(b) shall not apply to such equipment,* and (b) the payroll of operators of such equipment shall be considered 'remuneration.'

"This endorsement, effective as of November 6, 1949, forms a part of policy No. SMC 151506 issued to Frank Spillane by the UNITED STATES FIDELITY AND GUARANTY COMPANY of Baltimore, Maryland." (Emphasis supplied.)

In seeking to determine the legal effect of this chaotic, piecemeal, conglomeration of incomplete declarations, insuring agreements, coverage, conditions, exceptions, exclusions, plus "vehicle exclusion" rider, making up this policy, as applied to the facts in this case, it is well to endeavor to determine what the parties had in mind in procuring and issuing this policy. A more simple problem is to determine what they did not have in mind. It seems clear that they did not have in mind protection of plaintiff for the type of accident that happened here.

■■ Plaintiff had no facilities for moving his equipment, and, in the action brought by Mrs. Wright, claimed, though unsuccessfully, that he did not undertake to move it, but instead employed Briggs for that

purpose, hence, had no need for insurance coverage. The defendant shared this opinion, and we cannot assume that the parties intended to provide insurance coverage where none was needed. It is clear also that the defendant did not intend to assume any responsibility for Briggs' actions and conduct. Briggs in fact had liability insurance of his own covering the operations of his International truck and lowboy — although limited to $5000.00 — to protect him from the very type of claim for which judgment was entered against him, his driver and plaintiff.

The definition of *premises* contained in the policy, coupled with the declaration in the policy:

"Location of premises *Same, Rocky Ford, Colo. & elsewhere in the State of Colorado,*" would seem to cover any and all premises in the state of Colorado. This, however, is limited in the policy definition of *premises* by the following: "except public ways used in connection with others."

Hence the accident, which happened on a public highway, did not occur on the premises mentioned in the policy, and does not fall within the hazards mentioned in the policy:

"Definition of Hazards

"Division 1. Premises — Operations

The ownership, maintenance or use of the premises, * * * ."

Counsel for plaintiff contend that paragraph 2 of the rider labeled "Vehicle Exclusion" eliminates the following exception contained in the definition of premises: "except public ways used in common with others," and provides coverage for vehicles regardless of whether they are on public ways used in common with others. We do not so interpret the rider, nor do we agree with defendant's counsel that the rider grants additional coverage. The rider is labeled *Vehicle Exclusion*. It deals with the vehicles away from the premises, but makes an

exception to: "Equipment * * * while towed by or carried on a power driven vehicle not so described."

Instead of granting additional coverage, this rider, true to its title, provides an additional situation for *exclusion of coverage* and that is *while towed by or carried on a power driven vehicle not so described.* We thus conclude, (1) that the accident did not occur on the *premises,* but did occur away from the premises — upon a public way — and therefore is not covered by the policy; (2) the accident occurred while the equipment was being towed or carried on a power driven vehicle which is excluded from coverage.

Defendant urges other reasons for denying plaintiff's rights to recover, but, in view of our holding that the policy afforded no coverage for the accident involved, no useful purpose would be served in discussing them.

The judgment is affirmed.