No. 20415.

Joseph H. Mayer and Silas T. Patton *v.*
William T. Sampson and Frank Z. Piper.
(402 P.2d 185)

Decided May 17, 1965. Rehearing denied June 7, 1965.

WOOD, RIS & HAMES, for plaintiffs in error.

EDWARD A. JERSIN, for defendants in error.

*In Department.*

Opinion by MR. CHIEF JUSTICE PRINGLE.

THE plaintiffs below, defendants in error here, Frank Piper and William Sampson, instituted this action in the trial court to recover for personal injuries and property damage arising out of an automobile accident which occurred on U. S. Highway 6 in Clear Creek Canyon, 3½ miles west of Golden, Colorado.

This is the second time this action has been brought before this Court. At the first trial, the judgment was in favor of the defendants, Joseph Mayer and Silas Patton, and against the plaintiffs. We reversed that decision and directed the trial court to grant a new trial. *Piper v. Mayer,* 145 Colo. 391, 360 P.2d 433. At the second trial, the jury returned a verdict of $4,500.00

in favor of Piper, and of $1,787.00 in favor of Sampson. Judgments were entered in the amounts of the verdicts plus interest. From these judgments, the defendants bring error.

In the late afternoon of March 16, 1958, the plaintiffs were returning from Kremmling, Colorado, to Denver, in Sampson's car. As they came around a curve, their motor stalled. They pushed the car off the traveled portion of the highway. They opened the hood of the car to look for the cause of the engine difficulty. Piper leaned over the right front fender, and Sampson stood directly in front of the car.

At this time, the defendants who were returning to Denver from skiing at Winter Park, came around the curve. Mayer was driving Patton's car. As he rounded the curve, he lost control of the car on the icy highway, and it skidded sideways some 100-200 feet along the road until it crashed into Sampson's car. Sampson ended up over the radiator, and Piper was thrown about 25 feet.

The defendants first argue that the trial court erred in failing to grant the defendants' motion to dismiss the complaint as to Patton. Their theory is that since Patton was not driving the car, but was only a passenger in it, he can not be held liable for the negligence of Mayer.

At the outset, we note that the relationship between Patton and Mayer was not that of bailor and bailee. A bailment consists of a delivery of personal property by one person to another in trust for a specific purpose, with a contract that the property shall be returned or accounted for when the special purpose has been accomplished, or kept until the bailor reclaims it. *Lewis v. People,* 114 Colo. 411, 166 P.2d 150. Patton testified that he was seated on the right side of the front seat and that although Mayer was driving he had retained control over Mayer, because it was his car. It is clear that under the circumstances here, there was

no such delivery of the car sufficient to constitute a bailment.

■ The facts here disclose that Patton and Mayer were engaged in a joint enterprise. A joint enterprise exists where the participants are engaged in the joint prosecution of a common purpose, each having authority to act for all and each controlling the movements of the undertaking in some part. *Spillane v. Wright,* 127 Colo. 580, 259 P.2d 1078. And each person in the joint enterprise is liable for the negligence of the others. *Spillane v. Wright, supra; Boyd v. Close,* 82 Colo. 150, 257 Pac. 1079.

Patton and Mayer had gone skiing in Patton's car with Mayer's two sons and two friends of theirs. Mayer, at Patton's request, had driven all the way down from Winter Park, and Patton specifically testified that he had retained control over Mayer. These facts show a common purpose with the requisite control in Patton sufficient to constitute a joint enterprise for the purpose of holding him accountable for the negligence of Mayer. The motion to dismiss as to Patton was properly denied.

The defendants' next assignment of error is based on the fact that, during the voir dire, counsel for the plaintiffs asked whether any of the prospective jurors were officers or stockholders of the Maryland Casualty Company. Counsel for the defendants moved for a mistrial for the reason that Travelers Insurance Company, not Maryland Casualty Company, was the insurer of Patton's car. The trial court denied the motion. The defendants argue that the denial constituted prejudicial error. We do not agree.

■■ Clearly, counsel has the right to inquire into any prospective juror's relationship to the defendants' insurance company. *Edwards v. Quackenbush,* 112 Colo. 337, 149 P.2d 809; *Rains v. Rains,* 97 Colo. 19, 46 P.2d 740. As the conduct of the trial and the control of counsel in statements made to the jury are fully within

the discretion of the court, and as the question whether a new trial should be granted for misconduct of counsel in his remarks to the jury rests in the sound judicial discretion of the trial court, its discretion will not be interfered with on writ of error unless it manifestly appears that such discretion has been abused. *Denver City Tramway Co. v. Nicholas,* 35 Colo. 462, 84 Pac. 813.

It appears from the record that counsel's error was inadvertently made. Furthermore, no question was asked as to any other insurance company than Maryland Casualty. The result was that the question conveyed to the jurors the knowledge that an insurance company was financially interested in the outcome of the litigation. This is no different from what would have occurred had counsel used the name of the company which, in fact, was the insurer. Thus, the defendants can show no prejudice. We therefore do not feel that the trial court abused its discretion, and it did not err in denying the motion for mistrial.

■ The defendants next argue that the trial court erred when it refused to grant the defendants' motion to dismiss for the reason that the plaintiffs had failed to make a *prima facie* case of negligence against the defendants. When reviewing a defendant's motion to dismiss, the evidence must be viewed in the light most favorable to the plaintiff. *Union Pacific Railroad Co. v. Shupe,* 131 Colo. 271, 280 P.2d 1115.

The record shows that the accident occurred at 6:20 P.M.; that it was getting dark, and Mayer had had the headlights on since they passed through Idaho Springs; that it had been snowing for about three hours, and was then snowing hard; that the highway was snow-packed and very slippery; that the road was a two lane highway, twenty-four feet wide; that the accident took place just past a curve, at a point where the road cuts through the mountains; that the road slopes downhill toward Denver; that Mayer told the investigating officer that he had been going 40-45 miles per hour; that a year

later, when his deposition was taken, he stated that he had been going 30-35 miles per hour; that on the witness stand at the second trial, four years after the accident, he testified that he had been going 20-25 miles per hour; and that Sampson testified that Patton admitted at the scene of the accident that they had been coming around the curve too fast.

Under this state of the record, the evidence at the close of the plaintiffs' case was more than adequate to create a *prima facie* case in favor of the plaintiffs.

■■ At the close of all the evidence, the defendants moved for a directed verdict. The trial court denied the motion. The defendants assert that this, too, was reversible error. When considering a motion for a directed verdict, the evidence must be viewed in the light most favorable to the party against whom it was made. Then, if the evidence is such that different conclusions might be drawn by fair-minded men as to whether negligence is shown, the question must be left to a jury for its determination. *Elliott v. Hill,* 148 Colo. 553, 366 P.2d 663. The evidence brought out in this case, as set forth above, obviously presented such a jury question.

The next two assignments of error deal with the defendants' contention that the plaintiffs were contributorily negligent as a matter of law. The testimony conflicted as to the exact position of Sampson's car at the side of the highway. According to the plaintiffs, they pushed it completely off the highway pavement. The defendants testified that it was on the pavement, but off the lane of travel, and their testimony was corroborated by the testimony of the investigating officer. It is not disputed that at least one tail light on the Sampson car was burning, and that Mayer saw it as he drove around the curve.

■ Based on this evidence, the defendants argue that the trial court erred in refusing to give their Instructions No. 6 and 8. Instruction No. 6 sets forth Colorado statutes regarding the parking of vehicles upon public

highways, and lighting requirements for a vehicle stopped on the highway during the hours of darkness. It directed the jury that a violation of any of the statutes constituted negligence as a matter of law. Instruction No. 8 set forth the law of contributory negligence.

Instructions substantially the same as these were given at the first trial. That action was held reversible error in the first case, on the ground that the conduct of the plaintiffs was unrelated in law to the collision. *Piper v. Mayer, supra.* That decision remains the law of this case, and we have been presented with no new evidence nor arguments which would compel us to now reason otherwise.

The defendants also argue that the trial court erred when it refused to instruct on unavoidable accident, in view of the icy condition of the road and the position of Sampson's car. Such an instruction was also given at the first trial, and also was held to be reversible error, on the ground that the evidence did not justify its submission to the jury. *Piper v. Mayer, supra.* Again, we have not been presented with any new evidence or arguments which compel us to now change that conclusion.

Instruction No. 7 given by the trial court contains a large part of C.R.S. '53, 13-4-33, the statute which establishes the various statutory speed limits on Colorado public highways:

"You are instructed that at the time and place of the accident on March 16, 1958, the following statutes of the State of Colorado were in full force and effect:

"Speed limits. No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions then existing.

"Where no special hazard exists, the following speeds shall be lawful, but any speed in excess of said limits shall be prima facie evidence that the speed is not reasonable or prudent and that it is unlawful:

"Forty miles per hour on open mountain highways;

twenty miles per hour on narrow, winding mountain highways and blind curves . . .

"The fact that the speed of a vehicle is lower than the foregoing prima facie limits shall not relieve the driver from the duty to decrease speed when approaching and crossing an intersection, when approaching and going around a curve, when approaching a hill crest, when traveling upon any narrow or winding roadway, or when special hazard exists with respect to pedestrians or other traffic or by reason of weather or highway conditions, and speed shall be decreased as may be necessary to avoid colliding with any person, vehicle, or other conveyance on or entering the highway in compliance with legal requirements and the duty of all persons to use due care.

"The provisions of this statute shall not be construed to relieve the plaintiff in any civil action from the burden of proving negligence upon the part of the defendant as the proximate cause of any accident."

The defendants argue that the giving of Instruction No. 7 was error for four reasons:

(1) They contend that the trial court erred, because the plaintiffs failed to have any witness testify to the posted speed limit at the site of the accident. However, it is evident that the plaintiffs had no burden to introduce the posted speed limit in connection with this instruction. The instruction's only function was to inform the jury that certain speeds under certain circumstances would be *prima facie* evidence that the speed was not reasonable or lawful — totally apart from any posted speed limit.

(2) The second contention of the defendants as to this instruction is that the court erroneously failed to include the portion of the statute which establishes that the general speed limit on Colorado highways is 60 miles per hour. They argue that the plaintiffs failed to show that the highway was a "narrow, winding mountain highway or blind curve," much less an "open mountain

highway," and therefore the 60 miles per hour provision was erroneously excluded. We do not agree. From the facts detailed above in the discussion of the motion to dismiss, it is clear that not only was it proper to exclude the 60 miles per hour provision, but that it would have been error to include it, because of the lack of evidence to support it, and the substantial evidence supporting the provisions given. *Calnon v. Sorel*, 108 Colo. 467, 119 P.2d 615.

(3) The defendants also argue that Instruction No. 7 was improper because it permitted the jury to find that the *prima facie* speed limit under the circumstances here was as low as 20 miles per hour. We find no error for the reason that the evidence detailed above was sufficient to allow the jury to find that the accident occurred on a "narrow, winding mountain highway or blind curve."

(4) The defendants' last argument concerning Instruction No. 7 is that there was no evidence to establish that they violated the provisions of the statute in question. We hold that there was ample evidence that the defendants violated the statute, and the issue was properly submitted to the jury for its determination. We have already noted that there is evidence that Mayer admitted driving at speeds in excess of 40 miles per hour.

Moreover, the statute contains a prohibition against driving at a speed "greater than is reasonable and prudent under the conditions then existing." When we consider that the accident occurred in the mountains, on a highway covered with snow and slippery, at night and just after the defendants rounded a curve, it is obvious that there was ample evidence to warrant the giving of the instruction in question. Even if the defendant had been traveling at less than the *prima facie* lawful speed, the jury could very well have found, under the circumstances here, that the defendants were traveling "at a speed greater than was reasonable and

prudent under the conditions then existing" and were consequently in violation of the statutory provisions. *Lambrecht v. Archibald,* 119 Colo. 356, 203 P.2d 897, 1 Blashfield, *Cyclopedia of Automobile Law & Practice,* § 747 (1948).

 Instruction No. 12 instructed the jury that if they found that Piper had injuries of a permanent nature, they could award damages based upon his life expectancy for his expected loss of future earnings. The defendants contend that the instruction should not have been given because there was no evidence that Piper had any permanent injury resulting from the accident, nor that he would lose future earnings.

The argument is not borne out by the record. Dr. Glassburn testified that Piper had sustained an injury to the lumbo-sacral joint as a result of the car accident, which had aggravated a pre-existing arthritic condition of the spine, and that he now has a permanent disability. Piper also testified that he was unable, because of the pain in his back since the accident, to resume his regular job as a mechanic for the Denver Public Schools, and that he had to take a job as a bus driver at a pay loss of $330 per year. Dr. Newman, for the defense, testified that Piper's entire disability was due to the pre-existing arthritis and that it was not aggravated by the accident. This conflict in testimony created a disputed question of fact as to what caused his present condition which was resolved by the jury.

 The defendants' final argument is that the award of damages to each of the plaintiffs was excessive because they were not supported by the evidence. The applicable principle is set forth in *Riss & Co. v. Anderson,* 108 Colo. 78, 114 P.2d 278:

"The question of damages was within the proper and peculiar province of the jury. It rested in their sound discretion, under all the circumstances of the case, and unless the damages are so outrageous as to strike every one with the enormity and injustice of them, and so

as to induce the court to believe that the jury must have acted from prejudice, partiality or corruption, we cannot, consistently with the precedents, interfere with the verdict. It is not enough to say that, in the opinion of the court, the damages are too high, and that we would have given much less. It is the judgment of the jury, and not the judgment of the court, which is to assess the damages in actions for personal torts and injuries."

Sampson, who is a barber, was awarded $1,787.00. Since he had a $47.00 physician's bill and a $245.00 car bill, he therefore was awarded $1495.00 for pain and suffering.

When the accident occurred, the car bumper hit his knee and the radiator hit his chest. His chest and legs were severely skinned. For some time after the accident, he felt pain, fatigue and weakness in his knee. About one month after the accident, Dr. Glassburn examined his leg. He discovered a decrease in the circumference of the thigh. He testified that the cause is usually disuse of the leg because the patient doesn't use the limb or joint normally because of the discomfort caused by the injury. He prescribed exercises, which Sampson did for a year, to build the leg back up to its normal size. Even at the time of the second trial, he felt numbness in his knee after a day of standing at his work in his barber shop. With this evidence in the record, we cannot say that the damages are "so outrageous as to strike every one with the enormity and injustice of them." We cannot therefore interfere with the award.

Piper was awarded $4500.00. He was thrown some 25 feet by the impact of the crash, and landed on his back and the back of his head. He incurred $156.00 medical expenses. He lost eleven days of work. As mentioned above, he had to take a salary decrease of $330.00 per year because he was unable to continue as a mechanic; at 61 years of age he had a life expectancy

of 15.44 years. The injury to his neck and upper back was very painful. Even at the time of the second trial, he testified, his back ached all the time, he was in constant pain, and he took medication prescribed for him by Dr. Glassburn. In view of these circumstances, we certainly cannot say, as a matter of law, that the verdict was excessive.

The judgment is affirmed.

MR. JUSTICE SUTTON and MR. JUSTICE FRANTZ concur.