507 P.2d 482 (1972)
Mabel WAGGONER, Plaintiff-Appellant,
v.
Arlene Louise WILSON, Defendant,
State Farm Mutual Automobile Insurance Company, Garnishee-Appellee.
No. 71-445.
Colorado Court of Appeals, Div. I.
December 19, 1972.
Rehearing Denied January 9, 1973.
Certiorari Denied March 26, 1973.
*483 Van Cise, Freeman, Tooley & McClearn, Charles Goldberg, Karl E. Ranous, Denver, for plaintiff-appellant.
Wolvington, Dosh, DeMoulin, Anderson & Campbell, Laird Campbell, Denver, for garnishee-appellee.
Selected for Official Publication.
SMITH, Judge.
Plaintiff was injured on October 3, 1969, when she was struck by a 1961 Ford Thunderbird driven by the defendant. Plaintiff received a judgment against the defendant in the sum of $39,727.80. Defendant did *484 not appeal, and the judgment became final. Subsequently, plaintiff served a writ of garnishment upon State Farm Mutual Automobile Insurance Company. State Farm filed an answer, and plaintiff filed a traverse to the garnishee's answers.
A hearing was held on the issue raised by the writ of garnishment and the traverse thereto. The court determined that State Farm was not indebted to defendant, and, hence, was not subject to garnishment by plaintiff. Judgment was entered against plaintiff, who appeals. We reverse.
In its answer to plaintiff's writ of garnishment, State Farm admitted that it had issued an automobile liability policy insuring Arlene Louise Wilson, defendant, regarding a certain automobile she owned other than the 1961 Ford Thunderbird involved in the accident. Such coverage would satisfy plaintiff's judgment only if defendant were driving a "non-owned automobile," defined by the policy as follows:
"Non-Owned Automobilemeans an automobile, trailer or detachable living quarters unit, not
(1) owned by,
(2) registered in the name of, or
(3) furnished or available for the frequent or regular use of the
named insured, his spouse, or any relative of either residing in the same household, other than a temporary substitute automobile."
Plaintiff's appeal challenges the construction the court gives the non-ownership clause and the application of that construction to the facts. The meaning or effect of insurance policy language is a question of law. General Casualty Co. v. Hines, 261 Iowa 738, 156 N.W.2d 118. Therefore, this court is not bound by the trial court's construction of the language of the insurance policy. A policy of automobile liability insurance is a contract and is construed in general accordance with the rules for construction of contracts. Hence, we will analyze the language of the contract in order to determine the intent of the parties regarding its meaning. Jennings v. Brotherhood Accident Co., 44 Colo. 68, 96 P. 982. See also Spillane v. United States Fidelity and Guaranty Co., 137 Colo. 385, 325 P.2d 700. Where the insurer has not been subjected to a greater risk than that contemplated by the parties to the contract, construction of the specific terms of the contract should not prevent the insured from realizing the benefits of the policy.
The purpose of a non-ownership clause, such as the one in question, is to provide the insured with coverage while the insured is engaged in the occasional or infrequent use of an automobile other than the one specified in the policy, but not to provide liability coverage in regard to unspecified automobiles which are furnished or available for the insured's frequent or regular use. Rider v. Lynch, 42 N.J. 465, 201 A.2d 561; Farm Bureau Mutual Insurance Co. v. Marr, 128 F.Supp. 67 (D.N.J.); Aler v. Travelers Indemnity Co., 92 F. Supp. 620 (D.Md.). The three categories in the policy which exclude an automobile from the status of being non-owned must be separately considered in light of the above principles.

I.
The evidence supported the court's finding of fact that Charles Beucker was purchasing the automobile in question from defendant and her husband pursuant to an oral sales agreement entered into on June 10, 1969. Beucker had made payments to defendant and her husband, but neither the license plates nor the certificate of title had been transferred to him. Defendant and her husband delivered possession of the automobile to Beucker and retained the title as security for the balance of the purchase price.
The oral sales agreement was a sales contract covered by the Uniform Commercial Code. C.R.S.1963, XXX-X-XXX(1). Although the certificate of title *485 was not transferred to Beucker, delivery of possession of the car to Beucker constituted a transfer of its ownership to him. C. R.S.1963, XXX-X-XXX(2). Notwithstanding the provision of C.R.S.1963, 13-6-8, that no purchaser "shall acquire any right, title or interest in and to a motor vehicle purchased by him unless and until he shall obtain. . . the certificate of title thereto," non-delivery of the certificate of title does not prevent change of ownership as between the parties to the transaction. United Fire and Casualty Co. v. Perez, 161 Colo. 31, 419 P.2d 663. Thus, as a matter of law, the automobile in question was not owned by defendant.

II.
The parties stipulated that defendant's name appeared on the records of the Department of Revenue as owners of the car at the time of the accident. Consequently, a question arises concerning the word "registered" in the insurance contract. The concept of registration is commonly understood to be a function of the law of each state. "Registered in the name of" should be construed to have the meaning accorded it by the applicable state law, especially where the phrase is used on an insurance company form given multistate distribution. Colorado law, C.R.S. 1963, 13-3-15, provides in pertinent part:
"Whenever the owner of a vehicle registered under the provisions of this article transfers or assigns his title or interest thereto the registration of such vehicle shall expire . . . "
As indicated above, defendant had transferred her interest in the automobile prior to the accident, and, consequently, the registration of the vehicle had expired at that time. Thus, under the terms of the policy, the automobile in question was not registered in the defendant's name at the time of the accident.

III.
The court found as a matter of fact that the automobile in question "was not used by the Wilsons more than two or three times" in the four month interval between the sale and the accident in which plaintiff was injured. The court also expressly found that defendant had obtained permission from Beucker to use the automobile on the date of the accident. These findings were supported by the evidence. From this, the court concluded, as a matter of law, that the car was, in the terms of the policy, "furnished or available for the frequent or regular use of the named insured." We disagree with this conclusion, and with the trial court's construction of the terms of the policy.
The connotation of the term "furnish" suggests that it refers to instances when the automobile was actually utilized by defendant. The terms "available" and "furnished" are not synonymous. With regard to the purpose of the clause, we construe "available" to require that the potential use of the automobile be to a substantial degree under the control of the insured. A car is not "available" where, as here, the keys and specific permission must be obtained each time use of the car is desired. See Farm Bureau Mutual Insurance Co. v. Marr, supra.
We conclude, as a matter of law, that the use shown by the evidence is not sufficient to establish that the car was "furnished or available for the frequent or regular use of the insured."

IV.
Having determined the automobile in question was not owned by, registered in the name of, or available for the frequent or regular use of defendant, it follows that, in the terms of the policy, the automobile in question was a "non-owned automobile." Therefore, defendant was entitled to coverage under her insurance policy with State Farm. Judgment is reversed and the cause remanded with directions to sustain plaintiff's writ of garnishment against State Farm Mutual Automobile Insurance Company and for the entry of appropriate orders thereon.
DWYER and PIERCE, JJ., concur.