**BOARD OF COUNTY COMMISSIONERS, FREMONT COUNTY, Colorado, Plaintiff–Appellant and Cross–Appellee,**

v.

**COLORADO COUNTIES CASUALTY AND PROPERTY POOL, Defendant–Appellee and Cross–Appellant.**

No. 93CA1124.

Colorado Court of Appeals,
Div. V.

Dec. 15, 1994.

Meconi & Jackson, Brenda L. Jackson, Canon City, for plaintiff-appellant and cross-appellee.

Hall & Evans, L.L.C., David R. Brougham, Denver, for defendant-appellee and cross-appellant.

Opinion by Judge TAUBMAN.

In this action contesting the denial of coverage under a liability insurance policy, plaintiff, Board of County Commissioners of Fremont County (County), appeals the summary judgment entered in favor of defen-

dant, Colorado Counties Casualty and Property Pool (CAPP). In addition, CAPP cross-appeals the trial court's denial of its motion for attorney fees. We affirm.

In November 1986, the sheriff of Fremont County fired a deputy under his command. In April 1987, the deputy, through his attorney, sent a letter to the sheriff notifying him of a possible tort claim for injuries resulting from his termination. The letter was not sent to the County or to the county attorney, nor did the sheriff notify the County that he had received this letter.

The first notification of the deputy's claim received by any representative of the County, other than the sheriff, was when the deputy filed a federal civil rights suit in February 1988 and served the County with a copy of the complaint and summons. Immediately upon receipt of the deputy's complaint, the County requested coverage under the CAPP policy.

Following the trial of his civil rights case, the deputy entered into a settlement agreement with the county and received $120,000 for compensatory damages, interest, attorney fees, costs, and expenses. Additionally, the County paid attorney fees and expenses for the defense of the sheriff and itself in the lawsuit. It is for both those sums that the County now seeks reimbursement from CAPP.

As the result of changing its liability insurer, the County, on July 1, 1987, entered into an insurance contract with CAPP. The policy was a hybrid of a "claims-made" and an "occurrence" type policy, was for a term of one year, and provided for an extension or renewal for consecutive one-year terms thereafter. The policy also contained language indicating that it had a "retroactive date," and it excluded coverage for acts that occurred prior to that date. In some parts of the policy the retroactive date was designated as July 1, 1987, but in two places it was shown as July 1, 1986.

Despite the policy references to July 1, 1986, it is undisputed that the County was informed that the CAPP policy would not apply to a claim that occurred prior to July 1, 1987, and that the County's prior policies

ended their coverage before that date. Consequently, the County entered into the insurance contract knowing that there was a "gap" in coverage between its prior policies and the CAPP policy.

The County argues that the policy should be construed so that its retroactive date was July 1, 1986, with the result being that its indemnification claim would fall within the policy period since the deputy's discharge occurred after that date. Alternatively, the County argues that the deputy's claim against it arose in February 1988, when it was first notified of his lawsuit and that, therefore, it would be a covered claim that arose within the one-year policy term.

Also, the County claims that the CAPP policy is one-sided and illusory because of its short policy period and limited retroactive coverage so as to render its exclusions from coverage unconscionable and unenforceable as a matter of law. Finally, the County claims that insofar as the insurance contract excluded coverage for events that occurred prior to the retroactive date, it is void as a matter of public policy because it did not provide for continuous coverage when the County changed insurance companies but maintained the same type of insurance.

Conversely, CAPP has consistently asserted that the "retroactive date" of the policy was July 1, 1987, the date the policy commenced. CAPP argues that the deputy's civil rights claims arose in November 1986, when he was fired, and that his letter to the sheriff in April 1987 was notice to the County of his claims. Accordingly, it argues that the policy provides no coverage since both the deputy's injury and the County's claim against the insurance policy occurred prior to the retroactive date.

Faced with these countervailing contentions, the trial court entered summary judgment in favor of CAPP and subsequently refused to grant CAPP its request for attorney's fees.

I.

The County contends that the insurance policy is ambiguous as to whether its retroactive date was July 1, 1986, or July 1, 1987

and, thus, the policy should be construed in its favor. We are not persuaded.

■ The interpretation of an insurance contract is a matter of law. *Bumpers v. Guarantee Trust Life Insurance Co.,* 826 P.2d 358 (Colo.App.1991).

■ An insurance contract should be construed to carry out the intention of the parties, and that intention should be ascertained, if possible, from the language in the policy alone. *Wheeler v. Allstate Insurance Co.,* 814 P.2d 9 (Colo.App.1991). However, if there is an ambiguity, uncertainty, or conflict as to coverage, courts should construe the policy in favor of the insured. *Simon v. Shelter General Insurance Co.,* 842 P.2d 236 (Colo.1992) (conflict); *Republic Insurance Co. v. Jernigan,* 753 P.2d 229 (Colo.1988) (ambiguity or uncertainty). Provisions of an insurance contract are ambiguous when they are susceptible to more than one reasonable interpretation. *National Casualty Co. v. Great Southwest Fire Insurance,* 833 P.2d 741 (Colo.1992).

As applied to the facts of this case, these principles appear to be in conflict. Although the policy has conflicting provisions or is ambiguous on its face regarding its retroactive date, it is undisputed, based upon depositions and testimony of the county commissioners, that the parties intended the retroactive date of the policy to be July 1, 1987. However, when these rules conflict:

> It has been stated that the polar star of construction of an insurance contract is the intention of the parties, and it is the duty of a court, if possible, to ascertain and apply that intention, regardless of whether the result is favorable to one party or another.... All of the other rules of construction are subservient to this.

13 J. Appleman, *Insurance Law & Practice* § 7385 (1993 Supp.).

■ Thus, ambiguity in a contract should first be resolved by giving effect to the intention of the parties. *Ballow v. Phico Insurance Co.,* 875 P.2d 1354 (Colo.1993) (Erickson, J., concurring). *See Pepcol Manufacturing Co. v. Denver Union Corp.,* 687 P.2d 1310 (Colo.1984) (a court should strive to ascertain and give effect to the mutual

intent of the parties); *Spillane v. United States Fidelity & Guaranty Co.,* 137 Colo. 385, 325 P.2d 700 (1958) (a court should endeavor to determine the intent of the parties at the time of procuring the insurance policy). Accordingly, if a court can ascertain the mutual intent of the parties, it need not construe the contract against either party, but rather should give effect to the parties' mutual intentions. *Ballow v. Phico Insurance Co., supra* (fn. 13).

■ Here, it is undisputed that, before it purchased the policy, the County was told that the CAPP policy would not apply to a claim that arose prior to July 1, 1987. Also, the County was informed that it could purchase an extended coverage period, or "tail," to eliminate any gap in coverage during its changeover to CAPP. In fact, the County actually priced such an additional policy but elected not to purchase one. Additionally, the County instituted a study to determine if any potential claims were in existence immediately prior to July 1987 and found that no such claims existed. The County even acknowledged that it had entered into this contractual agreement knowing that there was a "gap" in the coverage between its prior policies and the CAPP policy. Therefore, the County made an informed and conscious decision to join the CAPP pool as of July 1, 1987.

Construing the contract so as to carry out the parties' intention, we conclude that coverage under the CAPP policy began on July 1, 1987. Hence, if the deputy's claim arose before that date, the policy did not provide coverage.

## II.

Alternatively, the County contends that the claim against it arose in February 1988 when it was first notified of the deputy's lawsuit and, since it promptly reported the claim to CAPP, both the occurrence and the making of the claim occurred within the policy period and should have been covered by CAPP under the policy. We do not agree.

■ The determination of whether a claim is made within the period of coverage de-

pends on the construction of the provisions in the insurance policy based on principles of contract interpretation. *National Casualty Co. v. Great Southwest Fire Insurance Co., supra.*

Both the County and the sheriff were assured parties under the CAPP policy, and thus, each was viewed as having a separate policy. The portion of the CAPP policy which defines CAPP's obligation to the County reads as follows:

> Underwriters hereby agree subject to the definitions, exclusions, and conditions hereunder mentioned, to indemnify the assured for ultimate net loss by reason of the liability imposed upon the assured by law ... for damages ... *in respect of a claim or claims* ... made against the assured *during the period* of this insurance *and* which arise *solely* by reason of personal injury ... suffered or alleged to have been suffered by any person ... *resulting from an accident which occurs on or after the retroactive date* set out in the declarations.

The policy defines "accident" as "an event which results in personal injury." "Personal injuries" include civil rights violations under the policy.

Here, the County first learned of the deputy's injury in February 1988 and promptly reported the injury to CAPP. Thus, the claim against the County occurred within the period of the CAPP policy. However, the event which resulted in personal injury to the deputy was his termination in violation of his civil rights in November 1986. Therefore, that event occurred prior to the retroactive date of the policy and, thus, was not covered by the policy.

### III.

The County further contends that the policy exclusions for events that occurred prior to the retroactive date are void as a matter of public policy because they would result in the policy's not providing continuous coverage when the County changed insurance companies, but maintained the same type of coverage. We reject this contention.

The County argues that it had no ability to protect itself against claims made against it for occurrences before the retroactive date of the CAPP insurance unless it maintained two insurance policies for the same coverage. It claims that, even though it may have been aware of a potential gap in coverage, it had no meaningful option by which to eliminate the gap. The County argues that public policy should favor continuous insurance coverage when an insured entity changes from one company to another, but maintains the same type of coverage.

As persuasive authority, the County relies on *Sparks v. St. Paul Insurance Co.*, 100 N.J. 325, 495 A.2d 406 (1985), in which the court invalidated a "claims-made" policy on the grounds that the insurance contract violated public policy because it provided unrealistically narrow coverage to the insured and, derivatively, to the public the insurer served, potentially resulting in injury to the public at large. In *Sparks*, the court held that inasmuch as there had been no proof that an insurance policy which afforded no retroactive coverage in its initial year of issuance conformed to the objectively reasonable expectation of the insured, it violated public policy.

However, here, since the County intended to obtain limited coverage, with no insurance during the gap period, the insurance policy at issue was precisely in accord with the County's reasonable expectations. Accordingly, we conclude that, under the circumstances presented here, the insurance policy was not void as a matter of public policy. *See Chacon v. American Family Mutual Insurance Co.*, 788 P.2d 748 (Colo.1990) (an insurance company can limit coverage so long as public policy is not violated).

For these same reasons, we reject the County's contention that the policy is unconscionable as a matter of law because it had a short policy period and provided no coverage prior to its retroactive date. *See Bumpers v. Guarantee Trust Life Insurance Co., supra.*

### IV.

On cross-appeal, CAPP contends that the position taken by the County before the trial court and in this appeal lacks substantial justification in fact and, therefore, CAPP is

entitled to recover its attorney fees incurred in this matter. We disagree.

Under § 13–17–102, C.R.S. (1987 Repl.Vol. 6A), the court may award attorney fees if it finds that the action lacks substantial justification. An action lacks "substantial justification," if it is substantially frivolous, substantially groundless, or substantially vexatious. *Swanson v. Precision Sales & Service, Inc.*, 832 P.2d 1109 (Colo.App.1992).

Claims involving novel questions of law for which no determinative authority exists are not frivolous, groundless, or vexatious. *Colorado Supply Co. v. Stewart*, 797 P.2d 1303 (Colo.App.1990). Moreover, the purpose of awarding attorney fees is to deter egregious conduct, and not to discourage legal theories that, while having no support in our case law, nevertheless may be persuasive because of the unique character of the case. *Wood Bros. Homes, Inc. v. Howard*, 862 P.2d 925 (Colo.1993).

The determination of whether attorney fees should be awarded is within the discretion of the trial court. *Little v. Fellman*, 837 P.2d 197 (Colo.App.1991). Further, the denial of an award will not be disturbed on appeal absent an abuse of discretion. *See Nagy v. Landau*, 807 P.2d 1227 (Colo.App.1990).

Here, the trial court determined that the claims made by the County did not lack substantial justification in law or in fact. The trial court specifically found that the claim of the county was based on a rational legal argument and that there was law, although not persuasive, to support its argument. Since the trial court did not abuse its discretion, its order denying CAPP's attorney fees is affirmed.

Judgment affirmed.

RULAND and BRIGGS, JJ., concur.