Colorado Court of Appeals Opinions || October 8, 2015


Colorado Court of Appeals -- October 8, 2015
2015 COA 144. No. 14CA1934. People in the Interest of A.W., and Concerning A.C.



 Â 

 
 
 
 COLORADO COURT OF APPEALS

 
 2015 COA 144

 
 



 Court of Appeals No. 14CA1934
 Mesa County District Court No. 14JV137
 Honorable Valerie J. Robison, Judge


 The People of the State of Colorado,

 Petitioner-Appellee,

 In the Interest of A.W., a Child, and Concerning A.C.,

 Respondent-Appellant.


 ORDER AFFIRMED

 Division VI
 Opinion by JUDGE FURMAN
 Booras and Ashby, JJ., concur

 Announced October 8, 2015


 J. Patrick Coleman, County Attorney, Daniella C. Shively, Assistant County Attorney, Grand Junction, Colorado, for Petitioner-Appellee

 Garrett Forsgren, Guardian Ad Litem

 Law Office of Patrick Gentzler, PC, Patrick K. Gentzler, Grand Junction, Colorado, for Respondent-Appellant

 
 Â 

 Â¶1Â Â Â Â Â Â Â Â  This case involves a juvenile court adjudicating an infant child, A.W., dependent and neglected. A.C., the mother of A.W., tried her case to a jury, which found that A.W. lacked proper parental care and that A.W.âs environment was injurious to her welfare.

 Â¶2Â Â Â Â Â Â Â Â  On appeal, mother challenges the order of adjudication. She contends that the court committed reversible error in (1) denying her motion to continue the adjudicatory hearing; (2) permitting the Mesa County Department of Human Services (Department) to introduce evidence about her prior dependency and neglect case in violation of People v. Spoto, 795 P.2d 1314 (Colo. 1990); and (3) denying her motion for a new trial.

 Â¶3Â Â Â Â Â Â Â Â  We reject each of motherâs contentions and affirm.

 I. Adjudicatory Proceedings

 Â¶4The Department obtained an emergency custody order concerning A.W. â who was in the neonatal intensive care unit at a local hospital due to respiratory problems â the day after A.W.âs birth. At the time, mother was homeless and had an active warrant for her arrest on welfare fraud charges.

 Â¶5Â Â Â Â Â Â Â Â  Mother had eight children before A.W. Her parental rights to her seven oldest children had been terminated, and she maintained only limited, supervised visitation with the youngest child, who lived with his father.

 Â¶6Â Â Â Â Â Â Â Â  On May 12, 2014, the Department filed a petition in dependency and neglect, alleging that A.W. lacked proper parental care and her environment was injurious to her welfare. Mother denied the allegations in the petition and requested an adjudicatory hearing. Motherâs ability to parent would obviously be a focal point of the hearing.

 Â¶7Â Â Â Â Â Â Â Â  In preparation for the hearing, mother listed J.L. on her proposed witness list. Mother met J.L. at a homeless shelter. While there, she claims J.L. helped her create a food log in preparation for A.W.âs birth. And J.L. witnessed her caring for her eighth child while they were at the shelter.

 Â¶8Â Â Â Â Â Â Â Â  Meanwhile, the Department filed a notice of intent to introduce evidence surrounding motherâs prior dependency and neglect case. The Department sought to use this evidence to show the prospective harm to A.W. if she were left in motherâs care without its involvement. Mother objected, arguing that this evidence wasÂ dissimilar and too remote in time, and did not meet the standards for admissibility under Spoto. After it found evidence that motherâs prior involvement with the Department met the standards for admissibility under Spoto, the court ruled this evidence was admissible, subject to a limiting instruction.

 Â¶9Â Â Â Â Â Â Â Â  On June 18, 2004, at a pretrial conference five days before the adjudicatory hearing, mother requested a continuance because J.L. was not available. Mother did not have J.L. under subpoena, and the record does not reveal whether mother knew when or if J.L. would be available. Although mother did not provide a transcript of this hearing, the minute order shows that the juvenile court determined there was not âgood causeâ to continue the adjudicatory hearing.

 Â¶10Â Â Â Â Â Â Â Â  At the adjudicatory hearing, the jury heard extensive evidence regarding motherâs past treatment of her older children â which led to her parental rights being terminated â including that she threw a phone at one child and failed to seek medical attention for the resulting injuries; that she left her younger children in the care of her eight-year-old son for at least an hour and a half; and that at least three of her children failed to thrive under her care. BeforeÂ the jury heard this evidence, the juvenile court instructed the jury that âin certain instances, evidence may be admitted for a limited purpose onlyâ and that the testimony from witnesses who spoke about motherâs prior adjudications âmay be used as evidence for the purpose of showing [A.W.] lacks proper parental care and/or her environment is injurious to her welfare, but . . . should not [be] consider[ed] . . . as evidence for any other purpose.â As noted, the jury found that A.W. lacked proper parental care and was subject to an injurious environment.

 Â¶11Â Â Â Â Â Â Â Â  After the juryâs verdict, mother filed a motion for new trial. Although she claimed that the Department stated or misstated facts not in evidence during closing arguments, she did not file an affidavit or court transcript supporting her claim. In response, the Department argued, among other things, that the motion should be denied because â[a]bsent an affidavit in support of Respondentâs request for a new trial, the [c]ourt is under no obligation to act.â The court denied motherâs motion.

 Â¶12Â Â Â Â Â Â Â Â  Based on the juryâs findings, the court adjudicated A.W. dependent and neglected. At a subsequent dispositional hearing, the court adopted a treatment plan for mother.

 II. Continuance

 Â¶13Â Â Â Â Â Â Â Â  We first consider whether the juvenile court erred in denying motherâs motion to continue the adjudicatory hearing. We conclude it did not.

 Â¶14Â Â Â Â Â Â Â Â  Two different standards guide our analysis. On the one hand, if the child is under six years of age at the time a petition is filed, section 19-3-505(3), C.R.S. 2015, provides that a continuance of the adjudicatory hearing beyond sixty days after service of the petition may be granted only on a finding that the continuance is in the best interests of the child. It states:

 Adjudicatory hearings shall be held at the earliest possible time, [but]. . . if the child is under six years of age at the time a petition is filed . . . in no instance shall such hearing be held later than sixty days after service of the petition unless the court finds that the best interests of the child will be served by granting a delay.

 On the other hand, Chief Justice Directive 96-08, Directive Concerning the Processing of Dependency and Neglect Cases, Â§ 4 (December 1996) (hereinafter CJD) provides that all continuances âwill be granted by a Judicial Officer only upon a finding that a manifest injustice would occur in the absence of a continuance.â

 Â¶15Â Â Â Â Â Â Â Â  Whether to grant a continuance based on the best interests of the child or manifest injustice standard is necessarily a matter entrusted to the juvenile courtâs discretion. We thus review a juvenile courtâs ruling on a motion for a continuance for an abuse of that discretion. C.S. v. People, 83 P.3d 627, 638 (Colo. 2004).

 Â¶16Â Â Â Â Â Â Â Â  Although she did not cite the CJD, it appears that motherâs request was made under section 4âs manifest injustice standard. Her continuance was made within sixty days of service of the petition and her request was based on her need to present favorable evidence about her capacity to parent and to rebut the Departmentâs evidence about her prior dependency and neglect case.

 Â¶17Â Â Â Â Â Â Â Â  When a party seeks a continuance of an adjudicatory hearing, section 4âs manifest injustice standard may conflict with section 19Â­3-505(3)âs best interests of the child standard. But, we do not need to determine if they do in this case. When a motion for continuance is based on the absence of a witness, there is no abuse of discretion in denying the motion if the party seeking continuance did not use due diligence to procure the presence of that witness. People in Interest of D.J.P., 785 P.2d 129, 131 (Colo. 1990); see also Bigler v.Â Richards, 151 Colo. 325, 331, 377 P.2d 552, 555 (1963); Durham v. Wilson, 68 Colo. 430, 431, 190 P. 525, 525 (1920). The party requesting the continuance carries the burden to show that he or she used due diligence. People in Interest of D.J.P., 785 P.2d at 132. Placing the burden on the moving party to show due diligence is appropriate given the expedited nature of adjudicatory hearings. See Â§ 19-3-505(3) (âAdjudicatory hearings shall be held at the earliest possible time.â).

 Â¶18Â Â Â Â Â Â Â Â  Mother requested the continuance and thus had the burden to show that she used due diligence to locate J.L. However, because she did not include a transcript of the hearing where she requested the continuance, and because the judge did not grant her request, we must assume that she did not make the proper showing. See People v. Ullery, 984 P.2d 586, 591 (Colo. 1999) (âIf the appealing party fails to provide us with . . . a complete record, we must presume the correctness of the trial courtâs proceedings.â). Accordingly, we conclude that the juvenile court did not abuse its discretion by denying her motion.

 III. Admissibility of Evidence of Motherâs Prior Dependency and

 Neglect Case

 Â¶19Â Â Â Â Â Â Â Â  We next consider whether the juvenile court erred in permitting the Department to introduce evidence about motherâs prior dependency and neglect case in violation of Spoto, 795 P.2d 1314. We conclude it did not, but for reasons other than those relied on by the juvenile court.

 Â¶20Â Â Â Â Â Â Â Â  In Spoto, our supreme court determined the limitations on the admissibility of prior bad acts. The court applied a four-part analysis.

 First, we must ask whether the proffered evidence relates to a material fact, i.e., a fact âthat is of consequence to the determination of the action.â CRE 401. If it does, we proceed to the second question: is the evidence logically relevant, i.e., does it have âany tendency to make the existence of [the material fact] more probable or less probable than it would be without the evidence?â CRE 401. If the evidence is logically relevant, we then must determine whether the logical relevance is independent of the intermediate inference, prohibited by CRE 404(b), that the defendant has a bad character, which would then be employed to suggest the probability that the defendant committed the crime charged because of the likelihood that he acted in conformity with his bad character. See CRE 404(b). Finally, if the proffered evidence survives the first three parts of the analysis, we must assess whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. CRE 403.

 Id. at 1318 (some citations omitted).

 Â¶21Â Â Â Â Â Â Â Â  In ruling that the evidence of motherâs prior dependency and neglect case was admissible, the juvenile court addressed the four Spoto prongs. In motherâs view, the court erred in so ruling because evidence of her prior parenting was unrelated to her ability to parent A.W. and was thus prohibited by CRE 404(b). We disagree with mother and conclude that neither CRE 404(b) nor Spoto apply to this prospective harm case. We reach this conclusion because evidence of motherâs past treatment of her older children was not introduced to suggest that she acted in conformity with that treatment in parenting A.W. That is, no prior acts could have established how mother treated A.W. because mother never had custody of her. Rather, the evidence showed the home environment and potential parental care A.W. might be exposed to if she were placed in motherâs care. Compare CRE 404(b) (âEvidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformityÂ therewith.â), with People in the Interest of S.N., 2014 COA 116, Â¶17 (âProspective harm . . . requires a prediction of whether, based on the parentâs past conduct and current circumstances, it is likely or expected that the parent will fail to provide proper care for the child in the future.â).

 Â¶22Â Â Â Â Â Â Â Â  Because A.W. had not been in motherâs care, the jury was required to determine whether A.W. was dependent and neglected based on a prediction of the home environment to which A.W. might be exposed if she were placed in motherâs care. The use of motherâs prior acts to make this prediction was relevant to the juryâs assessment of A.W.âs status. As our supreme court in People v. D.A.K., 198 Colo. 11, 15, 596 P.2d 747, 749-50 (1979), explained:

 A proceeding to determine whether a child is dependent or neglected is designed to determine the childâs status or situation at the time of the adjudication. . . . However, the childâs situation on the day of the hearing cannot be viewed in a vacuum. The evidence of alleged instances of abuse and parental neglect relied upon to establish the childâs dependency and neglect must be considered in the context of the . . . parentâs prior behavior.

 Â¶23Â Â Â Â Â Â Â Â  Accordingly, because motherâs acts in a prior dependency and neglect case were used to predict whether A.W. would be exposed toÂ an injurious environment, and were relevant to the jury determining A.W.âs status as dependent and neglected, neither CRE 404(b) nor the four-part Spoto test applies to this case.

 Â¶24Â Â Â Â Â Â Â Â  Even so, mother contends that the introduction of evidence of her prior dependency and neglect case was inadmissible under CRE 403. We disagree.

 Â¶25Â Â Â Â Â Â Â Â  CRE 403 allows relevant evidence to âbe excluded if its probative value is substantially outweighed by the danger of unfair prejudice.â Unfair prejudice occurs when evidence has a tendency to suggest a decision on an improper basis. See Koehn v. R.D. Werner Co., Inc., 809 P.2d 1045, 1048 (Colo. App. 1990)

 (â[P]rejudice which calls for exclusion is given a specialized meaning: an undue tendency to suggest decision on an improper basis, commonly an emotional one, such as bias, sympathy, hatred, contempt, retribution or horror.â).

 Â¶26Â Â Â Â Â Â Â Â  We have already concluded that the evidence surrounding motherâs prior dependency and neglect case was relevant to the juryâs consideration of the home environment to which A.W. might be exposed if she were placed in motherâs care. It is well established that the Colorado Rules of Evidence strongly favor theÂ admission of relevant evidence. See CRE 402; People v. Czemerynski, 786 P.2d 1100, 1108 (Colo. 1990).

 Â¶27Â Â Â Â Â Â Â Â  We also noted that the juvenile court instructed the jury to consider the evidence of motherâs prior dependency and neglect case âfor the purpose of showing [A.W.] lacks proper parental care and/or her environment is injurious to her welfare, but . . . not . . . for any other purpose.â And it is well established that, âabsent evidence to the contrary, we presume that a jury follows a trial courtâs instructions.â Qwest Servs. Corp. v. Blood, 252 P.3d 1071, 1088 (Colo. 2011). Because mother has not indicated how the jury did not abide by this limiting instruction, and the evidence surrounding her prior case was not so prejudicial that the jury could not follow this instruction, see Perez v. People, 2015 CO 45, Â¶43, we assume the jury did not consider motherâs prior acts for an improper purpose. Accordingly, we conclude there was no unfair prejudice and the evidence was not prohibited by CRE 403.

 IV. New Trial

 Â¶28Â Â Â Â Â Â Â Â  We last consider whether the juvenile court erred by denying motherâs motion for a new trial. We conclude it did not.

 Â¶29Â Â Â Â Â Â Â Â  The question of whether a new trial should be granted is within the sound discretion of the juvenile court. Mayer v. Sampson, 157 Colo. 278, 282-83, 402 P.2d 185, 188-89 (1965). We review only for an abuse of discretion. Id.

 Â¶30Â Â Â Â Â Â Â Â  Mother contends that the divisionâs decision in Park Stations, Inc. v. A.C. Hamilton, 38 Colo. App. 216, 554 P.2d 311 (1976), relieves her of her obligation to file an affidavit under C.R.C.P. 59(d)(1). We disagree. In Park Stations, the division held that a trial court could grant a motion for a new trial absent an affidavit. Id. at 219, 554 P.2d at 313. But, that holding does not indicate that the court must grant a motion absent an affidavit. On the contrary, the division stated, âupon receipt of a motion for a new trial on those grounds which, according to the rules, must be supported by affidavit, the court is not required to act in the absence of such affidavit.â Id.

 Â¶31Â Â Â Â Â Â Â Â  Because C.R.C.P. 59(d)(1) requires a motion for new trial to be supported by affidavit and motherâs motion was not, we conclude that the juvenile court did not abuse its discretion by denying her motion.

 V. Conclusion

 Â¶32Â Â Â Â Â Â Â Â  The order adjudicating A.W. dependent and neglected is affirmed.

 JUDGE BOORAS and JUDGE ASHBY concur.




These opinions are not final. They may be modified, changed or withdrawn in accordance with Rules 40 and 49 of the Colorado Appellate Rules. Changes to or modifications of these opinions resulting from any action taken by the Court of Appeals or the Supreme Court are not incorporated here. 



Colorado Court of Appeals Opinions || October 8, 2015


Back