21CA0854 Peo in Interest of RPS 01-20-2022 COLORADO COURT OF APPEALS Court of Appeals No. 21CA0854 Adams County District Court No. 19JV186 Honorable Katherine R. Delgado, Judge The People of the State of Colorado, Appellee, In the Interest of R.P.S., a Child, and Concerning T.S., Appellant. JUDGMENT AFFIRMED Division VI Opinion by JUDGE FREYRE Navarro and Harris, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced January 20, 2022 Heidi Miller, County Attorney, Rebecca Wiggins, Assistant County Attorney, Westminster, Colorado, for Appellee Josi McCauley, Guardian Ad Litem Steven E. Baum, Office of Respondent Parents’ Counsel, Denver, Colorado, for Appellant 
1 ¶ 1 In this dependency and neglect proceeding, T.S. (father) appeals the judgment terminating his parental rights to R.P.S. (the child). We affirm. I. Background ¶ 2 In June 2019, the Adams County Human Services Department (Department) initiated an action in dependency and neglect and assumed temporary legal custody of the child. The Department alleged that law enforcement found the child, who was two years old at the time, wandering the streets without parental supervision. The Department reported that father was incarcerated in the county jail. The Department placed the child in a foster home. ¶ 3 Father made a no-fault admission to the petition, and the juvenile court adjudicated the child dependent and neglected. The court adopted a treatment plan for father in July 2019. After father was released from jail, the court approved an amended treatment plan for him. ¶ 4 The Department moved to terminate father’s parental rights in April 2021. The juvenile court held an evidentiary hearing the following month. After hearing the evidence, the court terminated father’s parental rights. 
2 II. Discussion ¶ 5 Father contends that the juvenile court erred by finding that (1) the Department made reasonable efforts to rehabilitate him and reunify him with the child; and (2) there were no less drastic alternatives to termination. Specifically, he asserts that the Department did not adequately investigate his family members for placement and that the court should have continued the termination proceeding to allow the Department to make a more thorough investigation. We are not persuaded. A. Standard of Review ¶ 6 Where resolution of an issue requires application of the termination statute to evidentiary facts, it presents a mixed question of fact and law. People in Interest of A.M. v. T.M., 2021 CO 14, ¶ 15. We review the juvenile court’s factual findings for clear error. C.R.C.P. 52. The credibility of witnesses, the sufficiency, probative effect, and weight of the evidence, and the inferences and conclusions to be drawn therefrom are all within the province of the juvenile court. People in Interest of C.A.K., 652 P.2d 603, 613 (Colo. 1982). But application of the proper legal standard to the 
3 particular facts of the case are questions of law that we review de novo. M.A.W. v. People in Interest of A.L.W., 2020 CO 11, ¶ 31. B. Law ¶ 7 The juvenile court may terminate parental rights if it finds by clear and convincing evidence that (1) the child was adjudicated dependent or neglected; (2) the parent has not complied with an appropriate, court-approved treatment plan or the plan was unsuccessful; (3) the parent is unfit; and (4) the parent’s conduct or condition is unlikely to change within a reasonable time. § 19-3-
604(1)(c), C.R.S. 2021; People in Interest of C.H., 166 P.3d 288, 289 (Colo. App. 2007). ¶ 8 In determining whether a parent is unfit under section 19-3-
604(1)(c), the juvenile court must consider whether the Department made reasonable efforts to rehabilitate the parent. § 19-3-604(2)(h); People in Interest of S.N-V., 300 P.3d 911, 915 (Colo. App. 2011). “Reasonable efforts” means “the exercise of diligence and care” for a child in out-of-home placement. § 19-1-103(114), C.R.S. 2021. ¶ 9 The Department satisfies the reasonable efforts standard if services are provided in accordance with section 19-3-208, C.R.S. 2021. § 19-1-103(114). Among the efforts required under section 
4 19-3-208 are screenings, assessments, and individual case plans for the provision of services; home-based family and crisis counseling; information and referral services to available public and private assistance resources; visitation services for parents with children in out-of-home placement; and placement services including foster care and emergency shelter. § 19-3-208(2)(b). ¶ 10 The juvenile court should consider whether the services provided by the Department were appropriate to support the parent’s treatment plan. S.N-V., 300 P.3d at 915. The parent is responsible for using the services provided by the Department to obtain the assistance needed to comply with the treatment plan’s requirements, People in Interest of J.C.R., 259 P.3d 1279, 1285 (Colo. App. 2011), and the court may consider a parent’s unwillingness to participate as a factor in determining whether the Department has made reasonable efforts, see People in Interest of A.V., 2012 COA 210, ¶ 12. ¶ 11 Before terminating parental rights under subsection (1)(c), the juvenile court must also consider and eliminate less drastic alternatives. People in Interest of M.M., 726 P.2d 1108, 1122 (Colo. 1986); see also People in Interest of L.M., 2018 COA 57M, ¶ 24 (The 
5 consideration of a less drastic alternative is not a separate criterion but rather “is implicit in, and thus intertwined with, the statutory criteria for termination.”). A less drastic alternative analysis requires the court to consider whether any placement, short of termination, would be in the child’s best interests. People in Interest of A.R., 2012 COA 195M, ¶ 44. Thus, in considering less drastic alternatives, courts must give primary consideration to the child’s physical, mental, and emotional conditions and needs. § 19-
3-604(3). ¶ 12 In assessing whether a proposed less drastic alternative is a viable option, a juvenile court may consider and weigh various factors, including whether an ongoing relationship with the parent would be beneficial or detrimental to the child. See A.R., ¶ 38. Long-term or permanent placement with a family member is not a less drastic alternative to termination where it does not provide the child with adequate permanency. Id. at ¶ 41. ¶ 13 For a less drastic alternative to be viable, it must do more than “adequately” meet a child’s needs; rather, the less drastic alternative must be the “best” option for the child. A.M., ¶ 27. Therefore, if the court considers a less drastic alternative but finds 
6 instead that termination is in the child’s best interests, it must reject the less drastic alternative and order termination. Id. at ¶ 32. When the juvenile court considers the availability of a less drastic alternative and still determines that the termination of parental rights would be in the child’s best interests, we must affirm the court’s decision if its findings are supported by the record. People in Interest of B.H., 2021 CO 39, ¶ 80. C. The Record ¶ 14 At the beginning of the termination hearing, father requested a continuance so that the Department could investigate his brother (paternal uncle) as a potential placement option. The court denied the request because the case had been open for almost two years, and it could not find good cause for further delay. ¶ 15 The caseworker then testified that the only family member father had suggested as a possible placement option was his mother (paternal grandmother). The caseworker said that she had not heard about paternal uncle until father’s counsel mentioned him during her request for a continuance. ¶ 16 The caseworker testified that she contacted paternal grandmother in September 2020, and paternal grandmother gave 
7 the Department permission to run a background check on her at that time. The caseworker said that the background check revealed that paternal grandmother had a “felony record” that included “child abuse and an assault charge.” On cross-examination, the caseworker clarified that mother had only felony charges, not convictions, from 2004. Additionally, the caseworker said that paternal grandmother had two other people living in her home, but she would not allow the Department to investigate her roommates. Based on this information, the Department declined to place the child with paternal grandmother. ¶ 17 Father testified that he knew paternal grandmother had criminal charges on her record, but he thought she could still be an appropriate placement option because the charges “were so old and the accusations were dismissed.” He also said that it was “hard to get a hold of anybody” while incarcerated, but that he had been “trying” to contact paternal uncle, who he thought “would be a good fit” for the child. Father also said that his “aunt would be a good fit.” Father testified that he never mentioned paternal uncle or his aunt (paternal great-aunt) to the Department because he “never 
8 anticipated being back incarcerated” and did not think “it would be problematic.” ¶ 18 In closing, father’s counsel argued that the juvenile court should deny the motion to terminate and continue the case “so that the Department could investigate potential family members as permanent placement options.” She argued that the Department “failed to fully consider” paternal grandmother and “look into” paternal uncle and paternal great-aunt. D. Reasonable Efforts ¶ 19 Father maintains that the Department failed to make reasonable efforts because the caseworker did not “adequately investigate the paternal grandmother or other family members as potential placement options.” ¶ 20 Preliminarily, we note that father does not challenge the juvenile court’s finding that the Department made reasonable efforts by providing him with the necessary services to enable compliance with the components of his treatment plan, including domestic violence treatment, child protection therapy, parenting classes, and visitation services. See S.N-V., 300 P.3d at 915. Nor does father challenge the court’s finding that he failed to participate 
9 in those services after he committed a domestic violence assault in October 2020 and was incarcerated in the department of corrections for the remainder of the case. A.V., ¶ 12; J.C.R., 259 P.3d at 1285. ¶ 21 The juvenile court found that the Department made efforts to identify potential placement options for the child and father only suggested paternal grandmother as a placement option. The court also found that it was father’s responsibility to give the caseworker names of family members that he wanted the Department to investigate, and even though he was incarcerated, he had the ability to contact the caseworker. The court noted that it had “learned of two additional family members” for the first time “almost two years into the case,” which “could have been provided much earlier.” The court further noted that father was arrested and sentenced to the Department of Corrections approximately seven months before the termination hearing, and therefore, he had reason to “provide information about other relatives” sooner rather than later. ¶ 22 The Department must evaluate a reasonable number of persons identified by the parent as possible placement alternatives. People in Interest of D.B-J., 89 P.3d 530, 532 (Colo. App. 2004). 
10 However, the Department has no obligation to independently identify and evaluate other possible placement alternatives. People in Interest of Z.P., 167 P.3d 211, 215 (Colo. App. 2007). Here, the record is clear that father never asked the Department to investigate paternal uncle or paternal great-aunt. Therefore, we conclude that the Department had no obligation to investigate those family members for placement, and as a result, we cannot say that the Department failed to make reasonable efforts. ¶ 23 Still, the record shows that father did ask the Department to investigate paternal grandmother. The record further indicates that the Department conducted a background check on paternal grandmother, which revealed criminal charges. The caseworker also testified that paternal grandmother did not allow the Department to run background checks on the other people living in her home. For these two reasons, the caseworker said that the Department declined to place the child with paternal grandmother. ¶ 24 On appeal, Father asserts that the Department’s “failure to conduct any investigation into [paternal grandmother] beyond reviewing her criminal background check demonstrates that it 
11 failed in its duty to exercise reasonable efforts.” We disagree for two reasons. ¶ 25 First, father does not provide us with any legal authority for his position. Father’s brief cites to People in Interest of C.T.S., 140 P.3d 332, 335 (Colo. App. 2006) to support his argument that the Department had to conduct further investigation to satisfy the reasonable efforts requirement. Yet, C.T.S. says nothing about whether a department must continue to investigate a relative placement option if the relative does not pass the background check. Nor does father direct us to anything in section 19-3-208 that would require the Department to take such an action to satisfy its reasonable efforts requirement. See §§ 19-1-103(114), 19-3-
100.5(5), C.R.S. 2021 (noting that the Department makes reasonable efforts by providing the services required in section 19-
3-208). ¶ 26 Second, father’s claim fails to address the Department’s secondary reason for declining placement with paternal grandmother. Even if paternal grandmother’s criminal history did not exclude her from being a placement option, father does not explain how the Department could have placed the child with 
12 paternal grandmother without performing background checks on the other people living in her home. The record does not show that further investigation of paternal grandmother’s home would have revealed whether her roommates had moved out or whether paternal grandmother was now willing to allow the Department to conduct background checks on the people living in her home. ¶ 27 Thus, based on the record before us, we cannot say that the Department failed to make reasonable efforts in this case. We therefore decline to disturb the judgment. E. Less Drastic Alternatives ¶ 28 Father next contends that the juvenile court erred by finding that there were no less drastic alternatives to termination, given that “the record demonstrated that at the time of termination the child was not in a permanent placement and potential kinship options had not yet been adequately investigated.” We discern no error in the court’s judgment for six reasons. ¶ 29 First, the record supports the court’s finding that termination was in the child’s best interests because he needed permanency that could only be achieved by termination and adoption. The caseworker testified that it was in the child’s best interests for the 
13 court to order termination because the case had been open for two years, the child was very young, and he needed permanency as soon as possible. See A.R., ¶ 41. ¶ 30 Second, the record supports the court’s finding that father had not complied with his treatment plan, that he was unfit, and that his conduct or condition was unlikely to change within a reasonable time. Father does not challenge the propriety of these findings. See A.M., ¶ 48 (noting that the parent did not challenge the termination criteria in affirming the court’s less drastic alternative finding); L.M., 27 (“[T]he determination of whether there is a less drastic alternative to termination will be influenced by a parent’s fitness to care for [the] child.”). Nor does he explain, given these findings, how an ongoing relationship would be in the child’s best interests. See A.R., ¶ 38. ¶ 31 Third, the record does not support father’s assertion that “the child was not in a permanent placement.” To be sure, the record reveals that the child had only recently moved into a new foster home. But we see nothing in the record indicating that this foster family could not give the child a permanent home. See § 19-3-
702(5), C.R.S. 2021 (defining a “permanent home” as the place 
14 where a child may reside if the child is unable to return home to a parent). In fact, the caseworker testified that the Department had found a foster family that wanted to adopt the child. ¶ 32 Fourth, as noted in Part II.D., the record shows that the Department adequately investigated the only potential placement option suggested by father, and the court found that she was not an appropriate placement for the child. See People in Interest of T.E.M., 124 P.3d 905, 910 (Colo. App. 2005) (noting that long-term placement with grandmother who ran a residential treatment facility in her home was not an appropriate placement option). As to the other relatives, the Department had no obligation to investigate them because father did not offer them as potential placement options. See Z.P., 167 P.3d at 215. Thus, there is no evidence in the record suggesting that an appropriate alternative placement option existed. See id. ¶ 33 Fifth, we are not persuaded by father’s assertion that the juvenile court should have denied the termination motion and continued the case for further investigation of the relatives. The court denied father’s request to continue the termination hearing to allow for further investigation, and he does not specifically address 
15 how the juvenile court abused its discretion when it denied that request. See People in Interest of A.W., 2015 COA 144M, ¶ 15 (whether to grant a continuance is a matter entrusted to the juvenile court’s discretion). Nor does he explain how further delay would be in the child’s best interests. See § 19-3-602(1), C.R.S. 2021 (In a case subject to the expedited permanency planning provisions, such as this one, the court may not “grant a delay unless good cause is shown and unless the court finds that the best interests of the child will be served by granting a delay.”); see also § 19-3-604(3). In any event, father does not point to any evidence in the record suggesting that further investigation of his relatives would have resulted in a different outcome. Indeed, father testified that he had yet to speak with either paternal uncle or paternal great-aunt. Thus, we do not even know whether they would be willing to accept placement. ¶ 34 Finally, when the juvenile court rejected less drastic alternatives because the child needed permanency that only an adoption could achieve, it could order termination even if there was a relative available to care for the child. See A.M., ¶ 32. In other words, the court determined that, regardless of the identity of the 
16 placement option, any alternative short of termination was not in the child’s best interests. Thus, even if an appropriate placement existed, we would still be obliged to affirm the court’s judgment. See B.H., ¶ 80. III. Conclusion ¶ 35 The judgment is affirmed. JUDGE NAVARRO and JUDGE HARRIS concur.