23CA2238 Peo in Interest of JMS 08-22-2024 COLORADO COURT OF APPEALS Court of Appeals No. 23CA2238 Adams County District Court No. 23JV30080 Honorable Emily Lieberman, Judge The People of the State of Colorado, Appellee, In the Interest of Ju.M.S., a Child, and Concerning Jo.M.S., Appellant. JUDGMENT AFFIRMED Division IV Opinion by JUDGE JOHNSON Graham* and Hawthorne*, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced August 22, 2024 Heidi Miller, County Attorney, Lisa Vigil, Assistant County Attorney, Westminster, Colorado, for Appellee Josi McCauley, Guardian Ad Litem Just Law Group, LLC, John F. Poor, Denver, Colorado, for Appellant *Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2023. 
1 ¶ 1 In this dependency and neglect proceeding, Jo.M.S. (father) appeals the juvenile court’s judgment adjudicating Ju.M.S. (the child) dependent and neglected as to him following a jury trial. We affirm. I. Background ¶ 2 The Adams County Department of Human Services (the Department) filed a petition in dependency or neglect regarding the then-two-year-old child. The petition alleged that father had punched mother in a car while the child was present. The petition further alleged that mother got out of the car and called law enforcement while father drove off with the child. ¶ 3 The Department later learned that the child had been placed with paternal aunt. But the petition indicated that paternal aunt was unable to secure permission via a power of attorney from the parents so that the child could obtain needed medical care. And the petition alleged that father had called paternal aunt threatening her if she did not return the child to him. ¶ 4 After an adjudicatory trial, the jury found that (1) the child lacked proper parental care through the actions or omissions of 
2 father, and (2) the child’s environment was injurious to her welfare. See § 19-3-102(1)(b), (c), C.R.S. 2024. Father appeals. II. Standard of Review ¶ 5 Both contentions raised by father require us to review the juvenile court’s evidentiary rulings. We review a juvenile court’s evidentiary rulings for an abuse of discretion. M.A.W. v. People in Interest of A.L.W., 2020 CO 11, ¶ 32. A court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair, or when it misapplies the law. Id. ¶ 6 To the extent father claims that he was denied the opportunity to present a defense, we review procedural due process claims de novo. People in Interest of C.J., 2017 COA 157, ¶ 25. III. Child’s Placement with Family ¶ 7 Father contends that the juvenile court erred because (1) it did not allow him to present evidence that he arranged for family to care for the child, and (2) the child would be safe if returned to him. We disagree with both contentions. A. Applicable Law ¶ 8 To be admissible, evidence must be relevant. CRE 402. Under CRE 401, evidence is relevant if it has “any tendency to make the 
3 existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.” ¶ 9 Adjudications “are not made as to the parents but, rather, relate only to the status of the child as of the date of the adjudication.” K.D. v. People, 139 P.3d 695, 699 (Colo. 2006) (quoting People in Interest of S.B., 742 P.2d 935, 939 (Colo. App. 1987)). A child is not dependent and neglected if the parent has made appropriate arrangements for the child’s care by a person who has a genuine interest in the child’s welfare. See Diernfeld v. People, 323 P.2d 628, 631 (Colo. 1958). B. Analysis ¶ 10 We are not convinced that father was unable to present evidence about the child’s placement with paternal aunt. And we are also not persuaded by his argument about the child’s safety if returned to him because he would continue to have paternal aunt care for the child. 1. Placement with Paternal Aunt ¶ 11 The juvenile court allowed the jury to hear about the parents’ decision to place the child with relatives. The caseworker testified 
4 that he attempted to contact both parents after receiving a referral from law enforcement about a domestic violence incident that had occurred in front of the child between mother and father. But the caseworker was unable to reach the parents. The caseworker also testified that he eventually received a call from paternal aunt, who told him that mother had been arrested at a hotel, father had fled, and law enforcement had allowed mother to call the paternal aunt to pick up the child. Thereafter, the caseworker met with paternal aunt and other relatives, and the relatives appeared to be appropriately caring for the child. And the caseworker had asked mother to sign a form that would assure that paternal aunt was able to get the child necessary medical care for an infected wound, but mother did not return the paperwork. ¶ 12 Father takes this argument a step further, though, and asserts that the juvenile court erred because it also prevented him from arguing or testifying about how, if the child were returned to him, she would not lack proper parental care or be in an injurious environment. This is because he would have signed a “power of attorney” so that paternal aunt could continue to care for the child. Neither at trial nor on appeal does father argue that he personally 
5 made arrangements for his family to care for the child. Regardless, the record belies father’s position. ¶ 13 The caseworker testified that he did not talk to father about signing a power of attorney form because the caseworker could not locate father. Once the caseworker was able to get in touch with father, the caseworker had only one in-person meeting with him, during which the caseworker could not discuss the child’s situation because father told the caseworker he was “having a hard time,” “needed to step out,” and “felt like he was going to make a poor choice.” ¶ 14 And at the hearing, father testified that he was aware that paternal aunt was caring for the child, and that he was grateful to the relatives. ¶ 15 Accordingly, the jury heard evidence about how paternal aunt came to care for the child. The jury was free to consider this evidence and accord it the weight it felt appropriate. See People in Interest of S.G.L., 214 P.3d 580, 583 (Colo. App. 2009) (“The credibility of the witnesses and the sufficiency, probative effect, and weight of the evidence, as well as the inferences and conclusions to be drawn therefrom, are within the discretion of the [fact finder].”). 
6 2. Father’s Future Plans ¶ 16 Father also argues that the juvenile court erred because it did not allow evidence or argument that he intended to continue to allow paternal aunt to care for the child for the foreseeable future. He asserts that his “preferred theory of defense” was to inform the jury that Department involvement was not necessary and that “the problem” was being addressed “in other ways” (i.e., by arranging for relatives to care for the child). ¶ 17 But evidence that father was willing to allow paternal aunt to continue to care for the child if the petition was dismissed had no relevance to whether the child was dependent or neglected at the time of the trial. See People in Interest of C.T., 746 P.2d 56, 58 (Colo. App. 1987) (evidence showing that a father’s relatives were willing to care for his child during his incarceration did not create a genuine issue of material fact about the child’s current status as dependent and neglected). ¶ 18 To the extent that father argues he was disadvantaged because the Department was able to present evidence about what would happen post-adjudication, but he could not, we disagree. The juvenile court informed the jury, in response to objections 
7 made by the Department and father, that it was not to base its decision on what may or may not happen to the child as a result of the verdict. ¶ 19 For example, when the caseworker testified that he was concerned about mother’s lack of contact with him because “we couldn’t have a conversation about steps moving forward to support the family and the child,” the court sustained father’s objection and told the jury to disregard the caseworker’s testimony. See People in Interest of A.W., 2015 COA 144M, ¶ 27 (“[A]bsent evidence to the contrary, we presume that a jury follows a [juvenile] court’s instructions.” (quoting Qwest Servs. Corp. v. Blood, 252 P.3d 1071, 1088 (Colo. 2011))). ¶ 20 Father also argues that the juvenile court violated his due process rights because it prevented him from presenting evidence of his “preferred defense” — i.e. the child was not in an injurious environment because the child was placed with his sister — when it declined to give the following jury instruction: [Father] asserts that Court involvement with social services is not necessary. [Father] asserts that he would have agreed and continues to agree to have his daughter . . . stay with his sister until he is released from 
8 custody and finds stability. He asserts that this is a family matter, and he has large family support, and that the matter can be handled with a power of attorney giving custody to [father’s] sister, without involvement from the government. In other words, father asserts that he was unable to present a defense that would have instructed the jury to dismiss the petition because he was willing to sign a power of attorney, the child was in the paternal aunt’s care, and thus the Department’s intervention was unnecessary. ¶ 21 “To protect the parental liberty interest, due process requires the state to provide fundamentally fair procedures to a parent in a dependency and neglect proceeding.” C.J., ¶ 27. “The fundamental requisites of due process are notice and the opportunity to be heard.” Id. (quoting Hendricks v. Indus. Claim Appeals Off., 809 P.2d 1076, 1077 (Colo. App. 1990)). Consequently, if the juvenile court prevented father from presenting a viable defense, father’s due process rights might have been violated. ¶ 22 To be sure, it is a viable defense for a parent to claim that, at the time of adjudication, a department’s intervention is improper because the child is not in an injurious environment, nor lacks 
9 proper parental care. But such a defense hinges on whether the parent seeks to introduce evidence that supports the assertion that such conditions are satisfied at the time of adjudication, and not based on speculative acts or circumstances that may take place in the future. ¶ 23 Specifically, father asserts that he should have been allowed to present evidence that he would allow paternal aunt to continue her care of the child after adjudication to counter the Department’s theory of “prospective harm.” But as discussed above, father had not signed the power of attorney at the time of adjudication. And the caseworker testified that father had previously threatened to pick up the child from the paternal aunt. Thus, the evidence father wanted to present as part of his defense was speculative because such acts may or may not take place in the future. And whether or not a child is dependent or neglected is based on circumstances that exist at the time of adjudication. ¶ 24 Therefore, under these circumstances, we are not persuaded that the juvenile court violated father’s due process rights. Cf. People v. Villa, 240 P.3d 343, 353 (Colo. App. 2009) (“[T]here is no constitutional right to introduce irrelevant . . . evidence.”); People v. 
10 Harris, 43 P.3d 221, 227 (Colo. 2002) (due process requires only that the accused be permitted to introduce relevant and admissible evidence); see also State v. Bergquist, 2019 VT 17, ¶ 53 (“Where a trial court acts within its discretion to exclude evidence, there is no due process violation.”); In re J.S., 217 Cal. Rptr. 3d 91, 99 (Ct. App. 2017) (noting that the due process right to present evidence is limited to relevant evidence of significant probative value to the issues before the court). Thus, we discern no basis for reversal of the juvenile court’s judgment. IV. Hearsay Evidence ¶ 25 Father also argues that the juvenile court erred when it allowed a police officer and the caseworker to testify about statements mother made. We agree that these statements were inadmissible hearsay. But ample other evidence supported the jury’s verdict; therefore, we conclude that any error was harmless. A. Applicable Law ¶ 26 “‘Hearsay’ is a statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.” CRE 801(c). A statement 
11 offered against a party that is the party’s own statement is not hearsay. CRE 801(d)(2). ¶ 27 Generally, error in a civil case is harmless if it does not affect a substantial right of a party. C.R.C.P. 61; People in Interest of R.D., 2012 COA 35, ¶ 25. An error affects a substantial right if it substantially influenced the outcome of the case or impaired the basic fairness of the trial itself. Bly v. Story, 241 P.3d 529, 535 (Colo. 2010). B. Analysis ¶ 28 Father objected to the police officer’s testimony relaying to the jury mother’s statements about father’s assault of her. The Department countered that mother was a party to the dependency and neglect proceeding and therefore the statements were not hearsay and were, instead, admissions of a party opponent under CRE 801(d)(2). The court agreed and allowed the officer to testify about mother’s statements. ¶ 29 The caseworker also testified about statements that mother made to him about the assault and that she used methamphetamine and fentanyl. Father did not object to this testimony, but we will consider his arguments related to the 
12 caseworker’s testimony as well because he had no reason to continue to object to mother’s out-of-court statements after the court decided that they would be admissible under CRE 801(d)(2). ¶ 30 We agree with father that the juvenile court erred when it determined the statements were not hearsay. Under CRE 801(d)(2), an out-of-court statement offered against a party is admissible only if it is the party’s own statement or if one of the other circumstances set forth in CRE 801(d)(2)(B)-(E) applies. Such exceptions generally include circumstances when the statements offered were made by another but on behalf of father. This is not the case here. ¶ 31 The statements testified to by the police officer and the caseworker were made by mother, yet they were used against father, and no showing was made that any of the circumstances set forth in CRE 801(d)(2)(B)-(E) applied. Because these portions of the police officer’s and the caseworker’s testimony were based on inadmissible hearsay, the court erred by admitting them. ¶ 32 Notwithstanding this error, we conclude that it was harmless because the jury heard substantial admissible evidence to support 
13 its verdict that the child lacked proper parental care and was in an injurious environment. ¶ 33 For example, the police officer testified about his own observations of mother’s injuries including that mother had “fresh blood” coming from her nose, “a few red marks,” and “two large bumps” on the side of her head. The officer testified that mother was transported to the hospital, and pictures he took of her injuries were admitted and published to the jury. See Blevins v. Tihonovich, 728 P.2d 732, 734 (Colo. 1986) (the witness’s testimony was based on his direct observations and therefore not hearsay). ¶ 34 And father invoked his Fifth Amendment right against self-
incrimination when asked (1) why he was incarcerated; (2) to explain mother’s injuries in the photographs taken by the police officer; (3) to describe “what happened when [he was] in the vehicle with mother and the child” on the date of the incident; and (4) whether it was safe to have a child in a home where there was substance use. The court correctly instructed the jury that it may, but was not required to, draw an inference that the answer to any question father refused to respond to would have been unfavorable to him. See Asplin v. Mueller, 687 P.2d 1329, 1332 (Colo. App. 
14 1984) (the fact finder may infer “that the answers would have been unfavorable and damaging” when a testifying party in a civil case declines to answer questions on Fifth Amendment grounds). ¶ 35 Accordingly, we conclude that the juvenile court did not commit reversible error. See C.R.C.P. 61 (“The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.”); see also People v. Wilson, 2013 COA 75, ¶ 24 (An error is harmless if, “in light of the entire record, the error did not substantially influence the verdict or impair the fairness of the trial.”). V. Conclusion ¶ 36 We affirm the judgment. JUDGE GRAHAM and JUDGE HAWTHORNE concur.