24CA0623 Peo in Interest of JLS 09-19-2024

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0623
Delta County District Court No. 23JV30007
Honorable Mary E. Deganhart, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of J.L.S., a Child,

and Concerning J.S.,

Appellant.

---

JUDGMENT AFFIRMED

Division III
Opinion by JUDGE GOMEZ
Dunn and Navarro, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced September 19, 2024

---

John F. Baier, County Attorney, Jodie L. Behrmann, Assistant County Attorney, Jason Wilson, Assistant County Attorney, Adriana Hartley, Assistant County Attorney, Delta, Colorado, for Appellee

Alison A. Bettenberg, Guardian Ad Litem

Padilla Law, P.C., Beth Padilla, Durango, Colorado, for Appellant

¶ 1    In this dependency and neglect proceeding, J.S. (father) appeals the juvenile court's judgment terminating his parent-child legal relationship with J.S. (the child).  We affirm.

## I.    Background

¶ 2    The Delta County Department of Human Services (Department) filed a petition in dependency and neglect after receiving reports that the child had tested positive for illicit substances at birth, that the parents were abusing substances, and that mother was attempting to take the child and leave in violation of a safety plan.  The child was removed from the home and placed with maternal grandparents, where he remained for the duration of the case.

¶ 3    The parents admitted the allegations in the petition, and the child was adjudicated dependent and neglected.  The court then adopted treatment plans for the parents.  Father's treatment plan required him to, among other things, participate in substance abuse treatment, participate in family time, maintain employment, maintain a safe and stable home, and cooperate with the Department.

¶ 4     Several months later, the Department moved to terminate parental rights.  After an evidentiary hearing, the court issued an oral ruling followed by a written order terminating the parent-child legal relationship between the parents.  Father appeals.

## II.     Termination Criteria and Standard of Review

¶ 5     The juvenile court may terminate parental rights if it finds, by clear and convincing evidence, that (1) the child was adjudicated dependent and neglected; (2) the parent has not complied with an appropriate, court-approved treatment plan or the plan has not been successful; (3) the parent is unfit; and (4) the parent's conduct or condition is unlikely to change in a reasonable time.  § 19-3-604(1)(c), C.R.S. 2024.

¶ 6     Whether a juvenile court properly terminated parental rights presents a mixed question of law and fact because it involves the application of the termination statute to evidentiary facts.  *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 15.  A determination of the proper legal standard to be applied in a case and the application of that standard to the particular facts of the case are questions of law that we review de novo.  *M.A.W. v. People in Interest of A.L.W.*, 2020 CO 11, ¶ 31.  However, we won't disturb the court's factual findings

if they are supported by the record. *Id.* at ¶ 32; *see also A.M.*, ¶ 15. The credibility of the witnesses, as well as the sufficiency, probative value, and weight of the evidence and the inferences to be drawn from it, are matters within the court's discretion. *A.M.*, ¶ 15.

### III. Discussion

¶ 7 Father asserts that the juvenile court abused its discretion by taking judicial notice of his previous and pending criminal cases. He also asserts that the court erred by finding the Department made reasonable efforts to reunify the family. We address each argument in turn.

### A. Judicial Notice

¶ 8 We first consider father's challenge to the juvenile court's taking of judicial notice of his criminal cases. Father asserts that the evidence presented regarding those cases was "not relevant, constituted improper character evidence, and included factual allegations that are not subject to judicial notice." We are not persuaded.

### 1. Preservation

¶ 9 We decline to consider the arguments by the Department and the child's guardian ad litem (GAL) that father didn't preserve this

issue for appeal. We needn't decide the arguments because, even if we assume that father preserved this issue, we discern no error.

## 2. Applicable Law

¶ 10    Under CRE 201(a), a court may take judicial notice of "adjudicative facts." An adjudicative fact is "one not subject to reasonable dispute" because it is "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." CRE 201(b). A court may take judicial notice of an adjudicative fact "whether requested or not," but it "shall take judicial notice if requested by a party and supplied with the necessary information." CRE 201(c), (d). "A party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed." CRE 201(e).

¶ 11    A court may take judicial notice of court records, as they are recognized as sources whose accuracy cannot be reasonably questioned. *See People v. Sena*, 2016 COA 161, ¶ 23 ("The occurrence of legal proceedings or other court actions are proper facts for judicial notice."); *see also id.* at ¶ 24; *People v. Sa'ra*, 117

P.3d 51, 56 (Colo. App. 2004) (a court may take judicial notice of the contents of court records in related proceedings). This includes court records indicating the existence of a warrant. *Sena*, ¶ 27.

¶ 12    The decision to take judicial notice must be exercised "cautiously because its purpose is to bypass the usual factfinding process." *Quintana v. City of Westminster*, 56 P.3d 1193, 1199 (Colo. App. 2002). We review a court's decision to take judicial notice for an abuse of discretion. *Sena*, ¶ 22. A court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, unfair, or when it misapplies the law. *People in Interest of E.R.*, 2018 COA 58, ¶ 6.

### 3.    Analysis

¶ 13    In its ruling, the juvenile court took judicial notice of father's prior criminal matters, but expressly limited its judicial notice "as argued by [father's counsel] on the record."

¶ 14    We disagree with father's assertion that the criminal records the court took judicial notice of were not relevant. Those records included father's convictions for false reporting, false identification, theft, and assault charges, as well as father's lack of compliance with probation and outstanding warrants stemming from some of

those cases. Father's criminal history was relevant insofar as it showed his continued struggles to comply with his probation and stay out of jail. *See People in Interest of R.J.A.*, 994 P.2d 470, 474 (Colo. App. 1999) (the "best indicator of mother's future success in treatment was her past history").

¶ 15　　We also disagree with father's assertion that the request for judicial notice was an attempt to admit improper character evidence. In making a termination decision, a court must consider a parent's conduct or condition, *see* § 19-3-604(1)(c)(III), and while evidence of prior acts isn't admissible to prove character or to show someone acted in conformity with that character, a "parent's past conduct and current circumstances" are relevant to predict whether "it is likely or expected that the parent will fail to provide proper care for the child in the future." *People in Interest of A.W.*, 2015 COA 144M, ¶ 21 (comparing CRE 404(b) with *People in Interest of S.N.*, 2014 COA 116, ¶ 17). We cannot say that the juvenile court acted outside its discretion in determining that the records could be used for that proper purpose, rather than as character evidence.

¶ 16　　Lastly, we reject father's assertion that the evidence the Department recited from his criminal cases included factual

6

allegations that were not subject to judicial notice. Father asserts that the "county attorney recited what she believed occurred in those cases, but it was not confirmed or corroborated." But father fails to further describe or sufficiently argue exactly what factual allegations the county attorney cited that were allegedly inaccurate or not subject to judicial notice. *See People v. Simpson*, 93 P.3d 551, 555 (Colo. App. 2003) ("We decline to consider a bald legal proposition presented without argument or development."). Further, upon father's counsel's request, the court specifically limited its judicial notice regarding anything that was hearsay or subject to dispute.

¶ 17    Finally, even if there was any error, it was harmless. *See* C.R.C.P. 61; *People in Interest of M.H-K.*, 2018 COA 178, ¶ 21. Nothing in the record suggests that the juvenile court afforded undue weight to evidence of father's criminal convictions when it terminated his parental rights. *See People in Interest of M.M., Jr.*, 215 P.3d 1237, 1249-50 (Colo. App. 2009) (in a bench trial, we presume that all incompetent evidence is disregarded by the court in reaching its decision, and we won't disturb the judgment unless the court couldn't have reached the result but for the incompetent

7

evidence). True, the court took judicial notice of father's criminal cases, but its focus in its oral and written rulings was on father's lack of compliance with his treatment plan and his failure to communicate with the Department or participate in family time with the child. In fact, the court didn't even mention the convictions in either its oral ruling or its written ruling.

## B.    Reasonable Efforts

¶ 18    We next consider father's assertion that the juvenile court erred by determining that the Department made reasonable efforts to reunite the family. Specifically, he asserts that the Department didn't engage him in substance abuse testing and treatment, as well as transportation to and therefrom; assist him in meeting the child's financial needs; or help him secure a safe and stable home. Again, we are not persuaded.

### 1.    Preservation

¶ 19    Contrary to the GAL's assertion, we are satisfied that father sufficiently preserved this argument for appeal. During closing arguments, father's counsel stated that father "object[ed] to termination of parental rights based on the lack of reasonable efforts." *See People in Interest of C.Z.*, 2015 COA 87, ¶ 9 (issues

8

presented in closing argument are considered preserved). Given this closing argument, we are satisfied that father's counsel brought the issue raised on appeal to the juvenile court's attention.

## 2. Applicable Law

¶ 20 A department of human services must make reasonable efforts to rehabilitate parents and reunite families before a court may terminate parental rights pursuant to section 19-3-604(1)(c). *See* §§ 19-3-100.5(1), 19-3-604(2)(h), C.R.S. 2024. Reasonable efforts means the "exercise of diligence and care" for children who are in out-of-home placement. § 19-1-103(114), C.R.S. 2024.

¶ 21 In deciding whether a department has satisfied its reasonable efforts obligation, the juvenile court should consider whether the services provided were appropriate to support the parent's treatment plan. *People in Interest of S.N-V.*, 300 P.3d 911, 915 (Colo. App. 2011). But the parent is ultimately responsible for using those services to obtain the assistance needed to comply with the treatment plan. *People in Interest of J.C.R.*, 259 P.3d 1279, 1285 (Colo. App. 2011). And the court may consider a parent's unwillingness to participate in treatment when determining whether

a department made reasonable efforts. *See People in Interest of A.V.*, 2012 COA 210, ¶ 12.

### 3.    Analysis

¶ 22    While the juvenile court didn't describe the Department's efforts, it determined that the Department had made reasonable efforts. Because the record supports the court's findings, we reject father's arguments.

¶ 23    The record shows that the Department provided reasonable efforts and attempted to engage father in the treatment services. The caseworker supervisor testified that referrals were made for services required under the treatment plan and that the Department provided resources, such as gas cards and financial assistance, to assist in completing those services. The Department also provided family time services and drug testing, and it gave father a phone to assist with communication and calling into urinalysis testing.

¶ 24    Despite these services, the record shows that father's engagement in the case was minimal and that his participation and communication with the Department ceased almost entirely once he was released from custody eight months before the termination

hearing. The caseworker supervisor testified that although the caseworker attempted monthly outreach efforts, father's last communication with the Department was seven months before the termination hearing. She also testified that father was reportedly homeless at the time of the last outreach, that the Department had never been able to verify his employment, and that he hadn't participated in family time with the child in the six months prior to the termination hearing. This testimony was undisputed. Notably, there is no indication in the record that father raised any concerns with access to services or requested any assistance with services or referrals during the case.

¶ 25     Thus, as the juvenile court explained, father hadn't "really done anything under [his] treatment plan" in the eight months preceding the termination hearing, and "if . . . parties are not engaged, there's not a lot that the Department is able to do to try to move this case forward for making sure that the parents are able to meet the objectives and the action items in the treatment plan." *See id.* (even the more stringent standard for active efforts "does not mean persisting with futile efforts"). In short, the record shows that it was father's own lack of communication and engagement in the

case — not the Department's lack of efforts — that prevented father from accessing additional referrals and services. *See id.*

## IV. Disposition

¶ 26 The judgment is affirmed.

JUDGE DUNN and JUDGE NAVARRO concur.